Hubbard *et al. v.* Harrison *et al.*

*J. L. Worden, J. Morris,* and *J. Colerick,* for appellee.

---

---

HUBBARD ET AL. *v.* HARRISON ET AL.

PROMISSORY NOTE.—*Indorser.—Mortgage.—Pleading.*—Suit on two promissory notes executed by A. to C., and transferred by C., by indorsement, to plaintiff. Answer by C., that he indorsed the notes as an accommodation indorser for A., in renewal of certain other promissory notes of

A. before that time held by the plaintiff; that at the time of said indorsement, the plaintiff held a mortgage from A. as security for the payment of said other notes, and any renewals thereof; that the plaintiff agreed with C., at the time of his indorsement, that in consideration of such indorsement the plaintiff would hold said mortgage for the benefit of C., as such indorser; and on the faith of such promise, he did so indorse the notes in suit; that said mortgage had, by the wilful and gross neglect and misfeasance of the plaintiff, without the fault of defendant C., ceased to be of any value as a security to C.; and that A. had become insolvent.

*Held,* that the answer was bad on demurrer, as it failed to state the terms and conditions of the mortgage, or the property mortgaged, or its value, or how it ceased to be of any value.

SAME.—*Mortgage.—Failure to Record in Time.—Pleading.—* C. answered in another paragraph the same matter, alleging, also, that the mortgage was set out with the complaint, and was on personal property, which property was left by the plaintiff in the possession of A., and that the mortgage was not recorded within ten days, which fact the plaintiff fraudulently concealed from C.; that plaintiff and A. induced C. to make such indorsement, the plaintiff consenting that A. should enter upon said mortgage an acknowledgment that C. was an accommodation indorser of the notes, which were in renewal of part of the original debt thereby secured; and in consideration that C. did so indorse the notes in suit, the plaintiff made an entry on said mortgage, acknowledging that so far as said mortgage was then a subsisting security, it stood as an indemnity to C. for such indorsement of the said notes, subject, however, to any priority, if there existed any in law, to other parties who might have become bound on any part of the original debt, or renewals of the same, or to the ratable interest of such parties in said mortgage; and the defendant alleged that the property mortgaged was more than sufficient to pay said notes, as well as other debts secured thereby; that the plaintiff became, by such entry on said mortgage, a trustee thereof for the benefit of C. and any others interested therein; that C. could not, by payment of the notes, avail himself of said mortgage, and he therefore refused to pay the same when due, and unpaid by A., and gave the plaintiff notice to resort to said mortgage security, which plaintiff refused to do; and by reason of such failure and refusal, and before the last of said two notes matured, one E. obtained a judgment against A., and sold, on execution, all the property included in said mortgage; that before either of said notes became due, the plaintiff obtained a judgment against A., which was prior also to the judgment of E., and levied upon all said mortgaged property, and assigned said judgment to one G., to enable him to purchase said property; and the same was all held by others, relieved of any lien of said mortgage; that the plaintiff so acted for the purpose of hindering, delaying, and defrauding C. of his right in said property, the plaintiff knowing said A. to have become insolvent; and by reason of the wilful negligence and misfeasance of the plaintiff, said mortgage became worthless to C., and this without his fault.   To this paragraph the plaintiff replied, that said mortgage was not held as a security for the notes, in renewal

of which the notes in suit were given, but to secure other notes of A. which were also indorsed by C.; that C. was liable on the notes of which the notes in suit were renewals, and believing that he would have to pay the same, and to save himself from loss, and avoid the operation of the bankrupt law, he procured A. to make said memorandum on the mortgage, knowing that said mortgage had not been recorded; and the plaintiff, not concealing said fact, nor soliciting him to indorse said notes, nor agreeing to hold said mortgage for his benefit, and without any consideration therefor, made said entry on the mortgage, to enable C., if he could, to avail himself thereof; that C. left the mortgage with plaintiff, without any promise from him that he would do anything therewith for C.'s benefit, and the same was subject at all times to his order.

*Held*, that this reply was good on demurrer.

EVIDENCE. — *Estoppel.* — The plaintiff was not bound by the indorsement made on the mortgage by A., but could dispute the truth of the statement contained therein on the trial.

PRACTICE. — *Agreement by Court as to Future Rulings.* — As a rule, it is not proper for the court to agree, beforehand, what it will or will not decide, at some subsequent stage of the cause.

EVIDENCE. — *Cross Examination of Party.* — A party examined by his adversary is not confined to a mere response, by way of cross examination, to what has been elicited from him in the direct examination, but he may testify to any matter pertinent to the issue.

PROMISSORY NOTE. — *Agreement to Pay Attorneys' Fees.* — The promise in a note to pay " attorneys' fees, if suit be instituted on this note," can be enforced against an indorser.

EVIDENCE. — *Attendant Circumstances.* — The conversations of the parties and their attorneys before and at the time of the indorsement of the notes, and the entries on the mortgage, were proper evidence to show the attendant circumstances of the transaction.

MORTGAGE. — *Assignment Without Transferring Debt.* — The assignment of a mortgage, without assigning an interest in the debt it is given to secure, is an unmeaning ceremony.

APPEAL from the Marion Circuit Court.

DOWNEY, J.—The appellees sued John W. Canan and the appellants, who are executors of the will of George W. Clippinger, deceased, on two promissory notes made by Canan to Clippinger, dated November 20th, 1869, one at sixty and the other at ninety days, payable at Harrison's Bank, with interest and attorneys' fees, if suit should be instituted on them, and which notes were indorsed by Clippinger to the appellees. A separate action had been commenced on each note, but as they were consolidated by agreement, and a

new complaint filed on both notes, no further notice need be taken of this circumstance.

Canan made default. The executors of Clippinger answered, first, the general denial; second, that their testator indorsed the notes for the accommodation of Canan, as renewals of certain other promissory notes of Canan, before that time held by the plaintiffs; that at the time said notes were so indorsed by the deceased to the plaintiffs, they held a mortgage from Canan as security for the payment of said other promissory notes and any renewals thereof; that the plaintiffs agreed with their testator, before or at the time of said indorsement, that if he would so indorse said notes, they would hold said mortgage, and it should stand as an indemnity to him against liability as such indorser; that he indorsed said notes on the faith of said agreement, and in consideration thereof; that said mortgage has, by the wilful and gross neglect and misfeasance of the plaintiffs, without the fault or privity of their testator, or of them, ceased to be of any value as a security in the hands of the plaintiffs, or as an indemnity to the testator, or to them; that said Canan has become insolvent; by reason of which their testator and they are discharged, etc.; third, that said notes were made by Canan as renewals of certain promissory notes held by the plaintiffs for money loaned by them to Canan on his individual credit; that the plaintiffs held a mortgage of personal property from Canan, as security for the payment of said last named notes and any renewals thereof, the mortgage bearing date, and having been executed and acknowledged on the 2d day of January, 1869, and has ever since remained in the possession of the plaintiffs, the property mentioned in the mortgage having been left by the plaintiffs in the possession of Canan; that the mortgage was recorded January 15th, 1869, and that a copy of it is filed with the complaint; that on the 20th day of November, 1869, plaintiffs and Canan procured and induced their testator to indorse said notes in suit, for the accommodation of Canan, by means of him, said Canan, and

in consideration that their testator would so indorse said notes, with the knowledge and consent of the plaintiffs, entering upon the back of said mortgage a memorandum in writing, as follows:

"I hereby acknowledge that George W. Clippinger has this day become an accommodation indorser for me upon two notes for three thousand dollars each, dated November 20th, 1869, due respectively sixty and ninety days after date, given by me to A. and J. C. S. Harrison, in renewal of six thousand dollars of the original debt secured by this mortgage. Dated November 20th, 1869.

"J. W. CANAN."

And by means of them, the said plaintiffs, in consideration of such indorsements, entering upon the back of said mortgage a memorandum in writing, as follows:

"We hereby acknowledge that this mortgage stands as an indemnity, so far as the same is now a subsisting security, to George W. Clippinger, for his indorsement to us of two notes made by J. W. Canan for three thousand dollars each, dated November 20th, 1869, due respectively sixty and ninety days after date, subject, however, to any priority, if such there be in law, to any other parties who may have become bound on any renewals of any part of the original debt secured by said mortgage, or to the ratable interest, if any, of such parties in said mortgage. Dated this 20th of November, 1869.     A. & J. C. S. HARRISON."

That the plaintiffs did, then and there, with an intent to defraud and take an undue advantage of said testator, withhold from him their knowledge of the fact that they had not had said mortgage recorded in the recorder's office of Marion county, Indiana, within ten days after it had been executed to them by said Canan, and did then and there permit their testator to rest in and act upon the belief that said mortgage would be an indemnity to him in any event whatever against the liability he was about to assume upon the faith and credit thereof, and upon the faith and credit of the memorandum which they had entered upon the back thereof, and

permitted said Canan to enter upon the back thereof, as security to them on the notes in renewal of those, the payment of which was secured by said mortgage; that the notes sued on in this action are the notes mentioned in the said memorandums so entered upon the back of said mortgage; and that their testator so indorsed said notes after said memorandums had been so entered upon the back of said mortgage, and without any other consideration than that the indemnity thus provided was to be an indemnity to him so far as the same was to them then a subsisting security, subject to any priority or ratable interest in such mortgage to such parties as were mentioned in said memorandum, and upon no other conditions and to no further extent; that after said indorsement Canan paid to the plaintiffs the sum of one hundred and fifty-six dollars, in consideration of the extension of credit given to him by the plaintiffs on the receipt of said two notes; that by reason of the premises, the plaintiffs became the holders of said mortgage as trustees of a pledge or fund for the indemnity of their testator and such other parties as were referred to in said memorandums; and that the notes, due in sixty days, matured, and Canan did not and would not pay the same, their testator believing, and as they aver the facts to be, that said mortgage was an original security in the hands of the plaintiffs for the debt of Canan, more than sufficient to pay said two notes mentioned in the complaint, as well as the balance of the debt for which the plaintiffs held said mortgage, and that the plaintiffs were at liberty to resort, and could resort, to the same, and make the same available as assets of said Canan, as well for the payment of said notes as for the payment of the other debts secured by said mortgage, and for the indemnity of the testator, as well as for the indemnity of the other persons whose claims under the mortgage were adverse to the claims of the testator, and that the plaintiffs had every means of making their claim effectual under said mortgage, and so making the same enure to the benefit of the testator as an indemnity, so far as the same was a subsisting security to them,

and that the plaintiffs held the same as a pledge, or fund, out of the avails of which the testator and such other persons were alike entitled to claim indemnity at the hands of the plaintiffs, subject to a priority and ratable interest, which were matters resting exclusively within the knowledge of plaintiffs, and depending upon the execution of the trust that then resided in them; whereas he, the said testator, could not, by the payment to said plaintiffs of said notes, or either of them, become an assignee of said mortgage, clothed with the rights and remedies of plaintiffs in the same, by way of subrogation or otherwise, so as to be able to resort to said mortgage as an indemnity in his own name and right, and, independently of the plaintiffs, and unincumbered by the trust for such other persons as were attached to said plaintiffs in said mortgage, did, by reason of the premises, refuse to take up and pay the said promissory notes as such surety to said plaintiffs, and did, therefore, give the plaintiffs due notice that he did, and would, require them to resort to said mortgage, and to use and apply the avails of the same to the benefit and behoof of him, their testator, according to such priority and ratable interest, as he might have therein, as an indemnity against his liability to them as surety as aforesaid, and at the same time warned them that unless they would so do, the testator would hold himself discharged from liability to them as such surety; that the plaintiffs, well knowing that said Canan was in insolvent circumstances, that the testator could acquire no other indemnity, that he could not resort to the mortgage, disregarding their obligations, as well as the rights of the testator, wilfully disregarded such notice, and did not resort to said mortgage; by reason whereof, without any fault on the part of their testator or of them, a judgment against Canan was obtained by John D. Evans, February 9th, 1870, before the note at ninety days matured, an execution issued on the same on the 14th of February, 1870, and was levied on all the property described in said mortgage on the 25th day of February, 1870, all of which was sold on said execution, March 28th, 1870, and pur-

chased by one Guetig, who had become assignee of the judgment; that prior to said judgment, to wit, January 12th, 1870, before either of said notes was due, the plaintiffs had obtained a judgment against Canan, had an execution issued on the same on the 24th day of January, 1870, and had it levied on all said property on the 24th day of February, 1870, and then assigned the judgment to said Guetig, to enable him to purchase said property; all of which was done by the plaintiffs to hinder, delay, and defraud the testator of his rights in said property; that all of said property is now held by others than said Canan, wholly unincumbered by said mortgage; and that the mortgage has wholly, by the wilful negligence and misfeasance of the plaintiffs, without any negligence on their part, or on the part of said testator, ceased to be of any value to them as an indemnity, and is no longer a subsisting security to the plaintiffs; and that Canan has, since the time of said testator's indorsement, become, and now is, wholly insolvent, and was insolvent when the testator gave the plaintiffs notice to proceed on said mortgage.

The second and third paragraphs of the answer having been held good on demurrer thereto by the plaintiffs, they replied in seven paragraphs, to wit:

First. A general denial of the second and third paragraphs thereof.

Second. For further reply to the second paragraph of the answer, that the mortgage was not held as a security for the notes, in renewal of which the notes in suit were given, or any of them, but was held as security for the payment of other notes and renewals thereof held by them; that Clippinger was liable, and holden to them, on the notes, in renewal of which the notes sued on were given as surety of Canan, which Clippinger believed he would have to pay, at the time of said indorsement, and, to secure himself, as far as possible, and fearing to take a mortgage direct from Canan, and hoping to avoid the effect of the United States bankrupt law, he procured Canan to make said memorandum

Hubbard *et al. v.* Harrison *et al.*

on said mortgage; that the plaintiffs did not agree with Clippinger that if he would indorse the notes in suit, they would hold said mortgage, and that the same should stand as an indemnity to him against any and all liability as such indorser, as claimed by the said defendants; but at the request, and for the accommodation of said Clippinger solely, and without any consideration therefor, the plaintiffs did sign a memorandum indorsed on said mortgage, as stated, to enable said Clippinger, if there was any benefit to be derived therefrom, to use said mortgage, and to be subrogated to the rights of the plaintiffs, if any they had, under said mortgage, and for no other purpose, and not to induce him to indorse said notes, as he was already bound for the said debt; nor did they agree to look to any other security than said Clippinger, nor that they should exhaust any other security before looking to him; that he voluntarily left said mortgage in their custody, on no agreement whatever with them, except that he was to have the same whenever he desired to use it; and it has ever since been at his disposal, and is now ready for his representatives if they desire it.

Fourth. For further reply to said second paragraph, that the mortgage was not recorded in the proper office within ten days after its execution, as the law requires, which fact was known to Clippinger at the time he indorsed said notes, and the rights of other creditors of Canan had attached, whereby said mortgage had become of no effect at and before the time when said endorsements were made thereon.

Sixth. For further reply to the third paragraph of the answer, that the mortgage was not held as a security for the notes, in renewal of which the notes sued on were given, but was held as security for other notes of Canan, indorsed by Clippinger, not connected with these notes; that Clippinger was liable to them on the notes, in renewal of which these notes were given, and he believing that he would have to pay the same, and to secure himself from loss, and avoid the operation of the bankrupt law, procured Canan to make said

indorsement on said mortgage, and knowing that the mortgage had not been properly recorded, said plaintiffs in no way misleading him, nor concealing from him the fact that said mortgage had not been duly recorded, nor soliciting him to indorse said notes without any agreement by them to hold said mortgage for him as indemnity, they, without any consideration, made said indorsement on said mortgage to enable him, if he could, to use said mortgage, and for no other purpose; nor did they agree to look to any other security than him; that he left said mortgage with plaintiffs, voluntarily, under no agreement that they should do anything therewith for him, but that the same might be obtained and used by him whenever he saw fit to, and could, do so; that it has always been, and now is, ready for him, etc.

Seventh. For further reply to said third paragraph, that said mortgage was not recorded at the date of said indorsements, and has never been recorded; and before said indorsements, the rights of other creditors of said Canan had intervened and attached to said mortgaged goods, and the said mortgage had become of no force or effect.

The defendants, the executors, demurred separately to all of the paragraphs of the reply, because they did not state facts sufficient, and the demurrers to the third and fifth paragraphs were sustained, and those to the other paragraphs were overruled. The third and fifth paragraphs of the reply are, therefore, not copied in this opinion.

There was a trial by the court; finding for the plaintiffs; motion for a new trial overruled; and final judgment for the plaintiffs.

The first four errors assigned relate to the correctness of the court's action in overruling the demurrers to the second, fourth, sixth, and seventh paragraphs of the reply. The second and fourth paragraphs of the reply are to the second paragraph of the answer. We must, therefore, examine the sufficiency of that paragraph of the answer; for if it was not good, then the demurrer was properly decided against the

Hubbard *et al. v.* Harrison *et al.*

defendants, as any kind of a reply would be good enough. for an answer, which contains no defence.   We are clearly of the opinion that the second paragraph of the answer is wholly defective and insufficient.   It is only necessary to read it, in order to see its defects.   In the first place, it fails to state the terms and conditions of the mortgage, or to show what property was mortgaged, whether it was a tract of land, and if so, whether it was one or one hundred acres, of the value of one or of one thousand dollars; or if it was on personal property, what it consisted of, and what was its value.   If the property was worth only one hundred or one thousand dollars, and the benefit of the mortgage was lost to the defendants by the "neglect and misfeasance" of the plaintiffs, as alleged in the answer, that could be no reason, we suppose, why they should lose any greater part of their debt than an amount equal to the value of the mortgaged property.   The damage to the defendants or to their testator, considering that the mortgage was valid, could not exceed the value of the property lost, which, according to the theory of the defendants, should have been applied to the payment of the debt for which their testator was liable; and without showing the extent of such damage, by alleging the value of the property, we do not see how the paragraph of the answer can be held sufficient.   But further, it is alleged in this paragraph of the answer, "that said mortgage has, by the wilful and gross neglect and misfeasance of the plaintiffs, without the fault or privity of the testator or the defendants, ceased to be of any value as a security, in the hands of the plaintiffs, or as an indemnity to the testator, or to the defendants."   How did it cease to be of any value, etc.? This is not good pleading.   It is stating a mere conclusion.

We think the sixth paragraph of the reply, which was directed to the third paragraph of the answer, was good.   It meets, by way of traverse or by new matter, all the material allegations of the third paragraph of the answer.

It is immaterial whether the seventh paragraph of the reply was good or bad.   It only asserts a fact which was already

in issue, being stated in the third paragraph of the answer; that is, that the mortgage had not been duly recorded, and that, by the intervention of other claims, the mortgage had become of no value. All of these questions were fully examined during the trial of the cause.

The only other error complained of is the refusal of the court to grant a new trial on the motion of the defendants.

The reasons assigned for a new trial were as follows:

"First. For error of law occurring at the trial and excepted to by appellants, and which worked accident and surprise to the appellants, which ordinary prudence could not have guarded against, in this, that is to say, that the appellants put the appellee, John C. S. Harrison, upon the stand as their witness (they having first asked the court if the said witness would be permitted to testify, in his cross examination, to any matters except such as were necessarily called out by his answer to such questions as should be asked him in the examination in chief, and received from the court a negative answer), and thereupon asked said witness the following questions in the examination in chief and no other, as bearing solely upon their defence as specially pleaded and set forth in the second and third paragraphs of their answer:

" 1. State whether or not George W. Clippinger, the testator, indorsed the notes in suit to your firm for the accommodation of, and as surety for, the defendant John W. Canan?

" 2. State whether or not John W. Canan executed, acknowledged, and delivered to your firm a mortgage on the personal property in the Spencer House, at Indianapolis, on the 2d day of January, 1869?

" 3. State, if you can, the name of the attorney who drew that mortgage?

" 4. State whether or not the notes representing the debt covered by that mortgage were promptly paid or renewed at maturity?

" 5. State who, if any one, were indorsers on any renewals of those notes, at the time the notes here sued on came to your possession?

"6. State whether or not you now have that mortgage in your possession and under your control.

"7. Will you please produce it to the court?

"8. Please state, if you can, whose signature this is under the first memorandum written upon the back of the mortgage.

"9. Please state whether or not this memorandum was signed by him with your knowledge or consent.

"10. State whether or not it was signed before the indorsement to your firm by George W. Clippinger of the notes now here sued on, and as a part of that transaction.

"11. State whether or not the notes spoken of in this memorandum are the same notes you here sue on.

"12. State, if you can, whose signature this is under the other memorandum written upon the back of the mortgage.

"13. State whether or not it was signed by you before the indorsement to your firm, by George W. Clippinger, of the notes here sued on, and as a part of that transaction.

"14. State whether or not the notes described in this memorandum are the same notes you here sue on.

"15. State, if you can, to what 'other parties,' and what 'renewals,' reference is had toward the close of this memorandum, if any.

"16. State whether or not you obtained a judgment on the note you have designated as the Guetig and Roos note against John W. Canan, Henry Guetig, and Jacob Roos, on the 12th day of January, 1870, in this court.

"Whereupon the court, upon the cross examination of the said witness, John C. S. Harrison, by his own attorney, permitted said witness to give his testimony upon the matter which was entirely new, and which was in nowise gone into or called out by any of said questions asked by the appellants upon the examination in chief, and upon which the appellees rely in the second and sixth paragraphs of their reply, in avoidance of the defences so set forth and specially pleaded in the second and third paragraphs of appellants' answer; that is to say, the said witness, although he had

been in nowise asked, upon the examination in chief, of what notes the notes sued on were renewals, or whether they were renewals of any notes, was permitted by the court to give his testimony that they were in renewal of notes, the originals of which were dated January 2d, 1869, and to offer such originals in evidence, and to testify that the notes sued on had no connection by renewal or otherwise with the notes named in the mortgage.

"Second. For the reason that the judgment rendered by the court involved excessive damages and error in the assessment of the amount of recovery, in this, that whereas only a judgment for six thousand two hundred and fifty-seven dollars and sixteen cents, principal and interest of the notes sued on, and costs taxed at —— dollars, should have been rendered against the appellants as executors of George W. Clippinger, an indorser of said notes, the court rendered a judgment against them for six thousand five hundred and sixty-nine dollars and ten cents, having added to the principal and interest of said notes the sum of three hundred and twelve dollars, attorney's fees.

"Third. For error of the court in admitting, over the objection and exception of the appellants, the testimony of John C. S. Harrison, John D. Howland, Israel Taylor, Samuel W. Watson, and John W. Canan, by way of varying and contradicting the terms of the two acknowledgments in writing upon the back of the mortgage signed by said John W. Canan, and the said appellees, by their firm name of A. & J. C. S. Harrison, the said mortgage with said written acknowledgment having already been produced and proved by the appellants.

"Fourth, fifth, and sixth. That the decision of the court is not sustained by sufficient evidence, and is contrary to law.

Seventh. For error of the court, in admitting (over the objection of the appellants) the testimony of John D. Howland, a witness for appellees, touching conversations between himself and Hammond, which took place before, and *not at*, the time of the signing by John W. Canan and the appellees

of such written acknowledgments upon the mortgage, in order to vary or contradict the engagements shown by such written acknowledgments.

"Eighth.    For error of the court in admitting, over the objection and exception of the appellants, the testimony of Israel Taylor as to what Harrison said to Hammond about the mortgage, in order to vary or contradict the engagements shown by the written acknowledgments signed by Harrison upon the mortgage, the said witness not testifying that it was said at the time of the signing by Harrison of the written acknowledgment, but testifying that he did not see Harrison sign the said written acknowledgment.

"Ninth. For error of the court in admitting, over the objection and exception of the appellants, the testimony of John C. S. Harrison, touching anything he said to Hammond, and any conversation between himself and Hammond before, and not at, the time of the signing by him of the acknowledgment in writing produced and proved, in order to vary or contradict the engagements shown by such acknowledgment in writing."

The first reason for a new trial is based on the alleged violation by the court of an agreement previously entered into with counsel for the defendants, concerning the extent to which the witness Harrison should be allowed to go in testifying on cross examination, or as a witness for the plaintiffs, when he should be put on the stand as a witness for the defendants.    It is not claimed that the plaintiffs or their attorneys were parties to this agreement.    As a rule, it is not proper for the court to state or agree beforehand what it will or will not decide at some subsequent stage of the cause, but it should leave counsel to decide for themselves what course they will pursue in the presentation of the facts of the case, or other steps to be taken, and decide questions when they are presented in their regular order. We find, however, upon an examination of the bill of exceptions, no such agreement.    A party examined by his ad-

versary is not confined to a mere response by way of cross examination to what has been elicited from him in the direct examination, but he may testify to any matter pertinent to the issue. 2 G. & H. 189, sec. 300. But from an examination of the testimony of Harrison, it is difficult to say that the matters testified to by him, at the instance of his counsel, were not so connected with the testimony in chief as to (be warranted under the right of cross examination. But, however this may be, there is nothing in this ground for a new trial.

The second reason for a new trial is based on the idea that attorney's fees could not be allowed as part of the damages to which the plaintiffs were entitled. The following expresses the position assumed by counsel for the appellants on this point in the case:

"Upon this feature of the case, we desire only to say that, so far as the words, 'and attorney's fees if suit be instituted on this note,' in the notes sued on, are concerned, they do not import a promise to pay a sum certain absolutely, and at all events, but are so controlled by a contingency—by something so entirely extrinsic—that if they do not destroy the negotiable quality of the notes altogether, the notes are, at least, not negotiable to the extent of any additional obligation that could be imposed by such words."

This question has been several times considered by this court, and we see no reason in the argument before us to change our rulings. The promise in the notes was to pay a sum certain, and if that certain sum had been paid according to promise, there would have been no question about the attorney's fees; that stipulation in the note becomes available only after and in consequence of the dishonor of the note by non-payment.

The third reason is, that the court admitted parol evidence to vary and contradict the terms of the indorsements on the mortgage, one of which was signed by Canan, and the other by the plaintiffs. There is no good ground for this position. The indorsement of Canan says

that the notes indorsed by Clippinger were "in renewal of six thousand dollars of the original debt secured by the mortgage." This was evidently a mistake, or it was done in pursuance of an arrangement between Canan and Clippinger, in order, if possible, to make the mortgage some security to Clippinger. The indorsement of the plaintiffs contains no such statement, and they were not bound by what was put in the writing signed by Canan. It was proper that they should show, and they did abundantly prove, that the notes, in renewal of which the notes in suit were given, were not part of the debt secured by the mortgage. The court violated no rule of law in allowing this evidence to be introduced.

The seventh, eighth, and ninth reasons for a new trial are of the same nature. Hammond was acting in the matter as the attorney of Clippinger; Howland was acting as the attorney of the plaintiffs; Canan was a party to the negotiations, and they all participated, as did one or both of the plaintiffs, in the conversations preceding and attending the transaction of the business and the signing of the papers, and their statements were properly admitted to show the attending circumstances, and, among these, whether the preceding notes were part of the debt secured by the mortgage, whether Clippinger knew that the mortgage had not been recorded, and the consideration and agreement on which the indorsements were made on the mortgage.

The other reasons for a new trial call in question the sufficiency of the evidence to justify the finding of the court. It was alleged by the defendants, in their answer, that Canan alone was liable on the notes for the debts, in renewal of which the notes in suit were given to the plaintiffs. But the evidence clearly shows that this allegation was untrue. There is nothing to the contrary of what is testified on this subject by J. C. S. Harrison and Canan, who each testified that the notes in suit were renewals of notes on which Clippinger was the security of Canan for the same amounts. It was also alleged in the answer that the debts, in renewal of which the

notes sued on were given, were a part of the debts secured by the mortgage. The evidence shows that this allegation is without any foundation in fact. On the contrary, the evidence makes it clear that the notes preceding these were secured by Clippinger alone as the surety of Canan, and not in any way connected with the mortgage.

Then it was alleged in the answer that the plaintiffs concealed from Clippinger the fact that the mortgage had not been recorded in time, and was, therefore, invalid as to third parties. The evidence shows that this fact was known to Clippinger. He could hardly have failed to know it, if it had not been told to him, from the examinations of the mortgage which he must be presumed to have made while negotiating for the making of the indorsements on it, and at the time when they were made. It would be a singular circumstance out of which to manufacture a charge of fraud, as the public records, upon examination, would, at once, show the truth of the matter, if the party did not have access to the original and the usual indorsements on it, which the law requires the officer to make. But we need not further examine the evidence. When the defendants failed to prove facts so essential in their case, it is difficult to see how it can be maintained that there should have been a finding in their favor.

There is a legal question involved in the case which is not discussed, and that is, whether the indorsement by the plaintiffs on the mortgage could, in any event, vest in Clippinger any right under the mortgage. The mortgage was executed to secure the payment of claims in which Clippinger had no sort of interest, either as payee, indorser, or surety. Neither the notes mentioned in the mortgage, which it was given to secure, nor any interest in them was assigned to him. He held none of the paper secured by the mortgage, nor was he indorser or surety on any such paper, so that he could claim under the mortgage for indemnity or reimbursement directly or by subrogation. The assignment of a mortgage, independent of the debt which it

is given to secure, is an unmeaning ceremony. But we need decide nothing on this point. See 4 Kent Com. 194. The debts which were secured by the mortgage, or some of them, were those which were reduced to judgments, and on which the executions issued upon which the mortgaged property was sold. It did not sell for enough to pay their debts. What right had Clippinger, then, under the mortgage, conceding that the memorandums gave him any right at all? It was expressly provided in the memorandum of the plaintiffs on the mortgage, that his right was "subject to any priority, if such there be in law to any other parties who may have become bound on any renewals of any part of the original debt secured by said mortgage." Had the mortgage been recorded in time, and had Clippinger by the indorsement acquired an interest in the mortgage, and had there been a sale of the mortgaged property on notice, or in pursuance of a judgment of foreclosure, the claims of those who were bound for the payment of the debts mentioned in the mortgage must have been first paid, and then, according to the evidence of the value of the property, there would have been nothing left for the defendants.

The court committed no error in refusing to grant a new trial.

The judgment is affirmed, with costs.

*U. J. Hammond* and *J. M. Judah,* for appellants.

*N. B. Taylor* and *E. Taylor,* for appellees.