McLean *et al. v.* Lowe.

Filed Jan. 9, 1891.

No. 14,504.

## McLean et al. *v.* Lowe.

Draft.—*Drawn upon Consignees.*—*Endorsement of by Seller.*—*Amount Placed to Plaintiff's Credit by Bank.*—*Failure of Consignees to Pay.*—*Liability of Bank for Amount of Drafts.*—*Set-off.*—The plaintiff sold live stock to B. for an agreed sum for shipment to a firm of commission merchants in Chicago. B. was not regarded by the plaintiff as financially responsible. Before shipping the stock the plaintiff and B. came to the defendants' bank, and a draft was written by B., or the cashier of the bank for him, on

McLean *et al. v.* Lowe.

the consignees, payable to the order of the plaintiff, for the amount of the purchase-price of the stock. The cashier placed the draft on the counter in front of the plaintiff, and said to him it was all right, and requested him to endorse it, and he did so. The defendants took the draft and paid the money to the plaintiff by placing it to his credit. The same thing was afterwards done as to another sale of stock made by the plaintiff to B. The consignees had, prior to these transactions, given a letter of credit to B. addressed to the defendants, but the plaintiff had no knowledge of the letter of credit. The consignees paid only a portion of the drafts. The plaintiff instituted this action to recover of the defendants the difference between the amount of the said drafts placed to his credit and the amount actually paid to him by the defendants on account of the same.

*Held*, that the title to the drafts passed to the bank, there being nothing to indicate any bad faith on the part of the defendants, and that the plaintiff became liable to the bank as an endorser, notwithstanding the fact that he was ignorant of the liability he was incurring by placing his name on the back of the drafts.

*Held*, also, that upon the dishonor of the drafts the loss must fall upon the plaintiff, and not upon the bank, and that the plaintiff's action was not maintainable.

*Held*, also, that the fact that the bank had deposited with them a letter of credit did not preclude them from requiring the plaintiff to endorse the drafts as an additional security.

*Held*, also, that under the law the plaintiff was presumed to know what he was doing when he endorsed the drafts, and in the absence of fraud he was bound to know, and it was his own negligence that he did not know.

*Held*, also, that the defendants having received on account of the drafts a sum in excess of the amount they had paid the plaintiff, and having failed to prove, as alleged in the set-off, that they had incurred any expense in making the collection of the consignees, the plaintiff was entitled to recover such excess.

From the Jasper Circuit Court.

*A. W. Reynolds, E. B. Sellers, E. P. Hammond* and *W. B. Austin,* for appellants.

*S. P. Thompson* and *R. P. Davidson,* for appellee.

OLDS, C. J.—The appellants were engaged in banking at Monticello, Indiana, in September, 1887. The appellee was a stock dealer. Wilson, Clark & Bodley were, at that time, commission merchants in the city of Chicago, Illinois, and

one Patrick Brady, a stock dealer, engaged in purchasing stock and shipping the same to Chicago to be sold by Wilson, Clark & Bodley. About the 5th of September, 1887, Brady purchased of the appellee cattle, sheep and hogs to the amount of $1,800. At the time of the purchase of the stock by Brady of appellee, Brady drew two drafts on Wilson, Clark & Bodley, one on September 5th, for $1,400, and one on September 7th, 1887, for $400, payable to the appellee. Each draft contained provisions to the effect that the endorsers and acceptors severally waive presentment for payment, protest, notice of protest and non-payment of the draft. The drafts were drawn at the bank of the appellants, the Citizens' Bank, at Monticello, Indiana, by one Albert Jost, an employee of the bank, and the appellee wrote his name upon the back of each. The drafts were passed to the bank and appellee received $1,500 of the amount in cash, and by his direction $198.04 was placed to the credit of his father, and the balance he received in money. Wilson, Clark & Bodley paid $874.62 on the drafts. Appellee drew from the bank $500 on his own check. On September 16th, 1887, appellee drew his check on the bank in his own favor for $1,000, and appellants declined to pay it, and appellee brought this suit.

The complaint is in two paragraphs. The first is for money had and received. The second alleges that on September 16th, 1887, appellee had on deposit in appellants' bank $1,000. On said day he drew his check on the bank for said amount, which appellants refused to pay, etc.

Appellants answered by way of defence in three paragraphs: 1st. The general denial. 2d. Payment. 3d. Setting up the facts alleging that appellee endorsed the drafts for $1,800 to appellants and received credit therefor to the amount of $1,500, and received the balance, $300, in cash, and afterwards received on his check $500; that the drafts were presented for payment to the drawees and payment thereof refused, except to the amount of $874.62, of which

appellee had notice before bringing suit, and that appellants had expended $100 endeavoring to collect the same; that the several amounts sued for by appellee were for credits given him by appellants on his endorsements of said drafts, and upon no other account and for no other purpose. Appellants also filed answers of set-off, in two paragraphs, declaring upon appellee's endorsements of the drafts for $1,400 and $400.

Appellee filed a reply in five paragraphs: 1. The general denial. 2. Want of consideration. 3. Payment. 4. Denial under oath of the execution of the drafts. 5. Alleging facts which it is contended show the drafts to be of no validity.

There was a demurrer filed by the appellants to each paragraph of the reply, and overruled, but it is conceded that the demurrer is informal, and that no question is presented by the ruling.

The jury returned a special verdict. Appellants moved for judgment in their favor upon the special verdict; for a *venire de novo*; for a new trial; that appellee have judgment on the verdict for only $67 and costs; also, that appellee only have judgment on the verdict for $80 and costs. These several motions were overruled and exceptions reserved, and the rulings assigned as error.

Appellee moved for judgment in his favor on the special verdict for $1,033.50, with interest from the time the verdict was returned, which motion was sustained and appellants excepted, which ruling is also assigned as error.

The facts as found by the jury in their special verdict, which are material to the issues, are as follows:

The defendants (appellants) were, from June 15th until after September 17th, 1887, and still are, partners, and, as such partners, are owners of the Citizens' Bank of Monticello, Indiana, the only bank in said town, and of which bank defendant McLean was, during said time, cashier and general manager, and during all said time Albert Jost was

an employee of the defendants in said bank, under the immediate directions of McLean in conducting the business of the bank, writing drafts and other commercial papers, both in the presence and absence of said McLean, and was defendants' agent to conduct the business of said bank, and defendants were acquainted with the plaintiff. The plaintiff was twenty-three years of age in February, 1888, and commenced doing business for himself, raising, selling and buying live stock, on a farm in White county, in 1887 ; that, on September 5th, 1887, plaintiff opened a deposit account with defendants' bank, and received pay for live stock from Patrick Brady by such bank deposit ; that Patrick Brady resided in the town of Lake, in Cook county, Illinois, and neither party trusted him financially; that Brady was engaged in buying live stock in White county, Indiana, from June 1st, 1887, to 'September 8th, 1887, and as a means of raising money to pay for the same he caused the following letter of credit to be written and placed on file at defendant's bank, which letter defendants accepted and acted upon : " Live Stock Commission Merchants, room 146, Exchange Building, Union Stock Yards, Chicago, Ill. 6—15th, 1887. To Wm. E. McLean, cashier. We will pay drafts drawn by P. Brady for live stock to be consigned to us. Very respectfully, Wilson, Clark & Bodley." The defendants, by acting upon said letter of credit, assisted said Brady in the payment for live stock purchased by him in the county of White from June 16th, 1887, until after September 7th, 1887. Before September 5th, 1887, the defendants honored and cashed, in the name of the Citizens' Bank of Monticello, Indiana, eight drafts drawn by said Brady, based on said letter of credit, and addressed to Wilson, Clark & Bodley, which eight drafts were all drawn payable directly to the said Citizens' Bank, amounting to $3,100 ; said letter of credit had not been revoked, and remained in full force until after September 7th, 1887. Said letter of credit had not been shown to plaintiff, and he was unacquainted with its terms

until after September 7th, 1887, and he did not in any manner trust to said letter of credit in selling his stock to Brady, or in getting his pay for the same, but the defendants did rely on said letter in getting their pay on all drafts drawn by Brady on Wilson, Clark & Bodley from June 16th until September 8th, 1887 ; that said Wilson, Clark & Bodley are, and have been during all of said time, solvent.

On the 4th day of September, 1887, plaintiff agreed to sell Brady three car-loads of cattle, hogs, and sheep, for $1,-804.54, which stock was, on the 5th day of September, 1887, undelivered, said Brady having paid only $100, and plaintiff refusing to allow the stock to be shipped until paid for. Brady proposed to plaintiff to go with him to defendants' bank on the evening of September 5th, 1887, to procure the pay for said stock. The hogs at that time were not weighed, the cattle and sheep were near Monon, ready to ship; the cattle and sheep, at the agreed price, amounted to near $1,-400; the hogs, when weighed, amounted to $407.65, the sale constituting one transaction. On September 5th Brady drew a draft, in defendants' bank, on Wilson, Clark & Bodley, for $1,400, and on September 7th drew another draft on same firm for $400, which drafts were handed to the defendants, and defendants, on September 5, placed to plaintiff's credit $1,400, and paid plaintiff, in cash, $102, and placed to credit of Lathan Lowe $198, and plaintiff repaid to Brady the sum advanced by him ; the drafts so drawn were to pay for said stock, which stock was shipped to Wilson, Clark & Bodley. Defendants informed plaintiff that $1,400 had been deposited to his credit in defendants' bank, and requested the plaintiff to see that the stock was shipped to Wilson, Clark & Bodley, and plaintiff permitted Brady to take the stock into his possession, and ship the same. Plaintiff would not have parted with said stock to Brady had he not been assured by defendants that the $1,400 was deposited to his credit.

On the occasion of drawing the $1,400 draft and placing

that amount to plaintiff's credit, Albert Jost placed upon the bank counter a blank piece of paper with the face down and saying to plaintiff it was all right and to sign it, which he did, and which paper was, in fact, the draft for $1,400, which was payable at sight, with eight per cent. interest after maturity, and attorney's fees, and a waiver by the drawees, endorser and acceptors of presentment for payment, protest and notice of protest, and non-payment of the draft. On the occasion of the drawing of the $400 draft, and plaintiff receiving credit for said amount, the plaintiff, under the same circumstances as he endorsed the $1,400 draft, signed his name upon the back of the $400 draft, which is the same in form as the one for $1,400; that plaintiff did not intend to make himself a party to any bill of exchange or draft, either on the 5th or 7th day of September, 1887. He made no contract with Brady, or the defendants, to accept in payment for his stock anything but money or an absolute deposit in defendants' bank; that plaintiff never had said drafts, or either of them, in his hands or under his control; that he did not direct said drafts, or either of them, to be made, and had no knowledge until after September 7th, 1887, that he had placed his name upon either of said drafts. The defendants were informed by the plaintiff that he wanted the pay for his stock, and they informed him that he had been paid $1,400 on September 5th, and asked him what he was going to do with the money, and he requested that it be left in defendants' bank on deposit. Defendants paid plaintiff's check for $500 on September 9th, 1887, and on September 16th, 1887, refused to pay plaintiff's check for $1,000; that plaintiff demanded of the defendants the $1,000 on deposit in defendants' bank on the 16th day of September, 1887, and they refused to pay it; that plaintiff would not have written his name on the backs of said two drafts, described in plaintiff's set-off, had he known they were drafts. The draft for $400 was never presented for payment or protest. Wilson, Clark & Bodley

paid the defendants $874.62 on the 9th day of September, 1887, and demanded a settlement with the defendants under said letter of credit.

We have extracted from the special verdict such facts as can in any way be material to the decision of the case under the issues, omitting therefrom a large amount of irrelevant matter and repetitions of facts and evidence contained in the verdict.

There is a statement in the verdict that the plaintiff's father, at some time previous to the transaction, in a general way, stated to the appellants that his son was going to commence business on his own account, and for them to give him any necessary instruction that he might need in doing business at the bank, and they replied that they would do so; but it does not appear that the appellants were requested for any instructions upon this occasion, or informed that he needed any, or that he did not fully understand the business; and it does not appear that the appellants did anything to mislead him, or had any interest in the transaction. As regards the letter of credit, it does not appear that the appellee had any knowledge of such a letter at the time of selling his stock, or endorsing the drafts. The fact that the bank had deposited with them such a letter of credit did not preclude them from requiring the appellee to endorse the draft as an additional security.

The facts found in the verdict, relating to the transaction with the appellants at the bank, may be summarized as follows: Appellee sold Brady live stock at an agreed price of $1,800, and was about to ship them to Wilson, Clark & Bodley, at Chicago; before shipping the stock appellee and Brady came to appellants' bank, on the 5th day of September, and a draft was drawn by Brady, or written by the cashier for him, on Wilson, Clark & Bodley, of Chicago, for $1,400, payable to the order of the appellee; Albert Jost, the cashier placed the draft on the counter in front of the appellee, and said to him it was all right, and requested him to endorse it,

McLean *et al. v.* Lowe.

and he did so, and the appellants, the banking firm, took the draft and paid to appellee the money by placing it to his credit; on the 7th day of September appellee and Brady again returned to the bank, and in the same way another draft for $400 was drawn and endorsed by the appellee, and the appellants took the draft and paid the appellee the money upon it.

There is not a fact found that tends to show any bad faith on the part of the appellants. They were doing a banking business. The appellee and Brady, who had purchased appellee's stock, came into the bank and made known their business, and wanted to draw on the persons to whom the stock was to be consigned for the price to be paid. The cashier wrote a draft for the amount addressed to the consignees, payable to appellee's order; Brady signed it, and then it was turned over for appellee to endorse it, and he is requested by the cashier to endorse it, the cashier saying it is all right. The appellee endorsed the draft, and the cashier took it up and informed the appellee that he would pay him the amount of it, and appellee accepted it. There was no occasion for any thing more being said. The transaction occurred in the way business men do business. It is no part of the duty of bankers to stop and explain to customers the legal liability of signing their names upon drafts.

If appellee did not know what he was signing it was his business to know, or to make inquiry and ascertain what it was, and his liability before signing and endorsing it.

Under the law he is presumed to know, and in the absence of fraud he is bound to know, and it was his own negligence that he did not know. If by any misrepresentations or fraud on the part of the appellants appellee had been misled and induced to endorse the drafts, or if appellants had procured appellee's signature by deception, then he might be in a position to ask that they stand the loss, and not he, and that he be released from the payment, but no such state of facts is found in this case.

Under the facts found there can be no question but that the title to the drafts passed to the appellants. They took possession of them in the appellee's presence immediately upon the appellee endorsing them, and paid him the money for each of them. As well might it be said that if Lowe had had a note in his possession, and walked into appellants' bank and placed it upon the counter and endorsed it, and appellants had picked it up and taken possession of it, and paid appellee the face value, and he accepted the money, the appellants would not be the owner and the appellee the endorser, as to say appellants are not the owners of the drafts and that appellee is not an endorser. Permitting them to take possession of them without objection, and receiving the money, was as complete a delivery as if there had been a full discussion concerning the transfer.

The appellee endorsed the drafts, and the law fixes his liability, and by that he is bound.

The burden was upon the appellee to make out his case upon his complaint. The law also casts the burden upon the appellants to make out their case upon their set-off pleaded, but this they did by the drafts, which are found to have been executed and endorsed by the appellee, and copies of each set out in the special verdict. When such facts were established the appellee was liable for the amount of the drafts unless he showed them to have been paid, or established other facts entitling him to be relieved from the payment of them.

The facts found show that the appellants received from Wilson, Clark & Bodley $874.62, and that they paid to the appellee $800, leaving in their hands $74.62 of the money actually received. See *Neal* v. *Wood*, 23 Ind. 523 ; *Fitch* v. *Citizens, etc., Bank*, 97 Ind. 211 ; *Smith* v. *Muncie, etc., Bank*, 29 Ind. 158; *Hubbard* v. *Harrison*, 38 Ind. 323 ; *Dutton* v. *Clapper*, 53 Ind. 276; *Am. Ins. Co.* v. *McWhorter*, 78 Ind. 136 ; *Clodfelter* v. *Hulett*, 72 Ind. 137 ; *Williamson* v. *Hitner*, 79 Ind. 233 ; *Robinson* v. *Glass*, 94 Ind. 211 ; *Stack* v. *Beach*, 74 Ind. 571 ; *Miller* v. *Powers*, 119 Ind. 79.

The court erred in rendering judgment on the verdict in favor of the appellee for $1,033.50.

From the facts found the appellants were not entitled to a judgment in their favor. There is no finding as to attorney's fees, and in the absence of a finding of some amount on account of attorney's fees the appellee was entitled to recover some amount.

The other questions presented may not arise on a re-trial of the cause.

The judgment is reversed, at costs of appellee, with instructions to grant a new trial.

Filed Jan. 10, 1891.