JOHN SEATON v. G. A. SCOVILL, *et al.*

1. PROMISSORY NOTE; *Negotiability; Stipulation to Pay Attorney-Fees.* A note otherwise negotiable, is not rendered non-negotiable by the addition of a stipulation to pay costs of collecting, including reasonable attorney-fees, if suit be instituted thereon.

2. ———— Such a stipulation does not affect the certainty of amount, requisite in negotiable paper, due at maturity. It only creates an uncertainty in the amount recoverable, in case of non-payment, after maturity, and after the element of negotiability has ceased, and in event of suit being brought on the note.

3. INDORSERS; PROTEST; DILIGENCE; *Proof of Notice of Protest.* It is incumbent upon a party seeking to charge an indorser, to prove a legal notice; but this like any other question of fact, is to be settled upon the testimony as it is given, and need not be proved beyond the possibility of mistake.

4. ———— *Service of Notice; Time.* Where the holder, and party to whom notice is to be given, reside at different places, it is generally sufficient if notice is sent by the mail of the day next succeeding the day of dishonor.

5. ——:—— *To Whom Given.* The holder of dishonored paper may give notice directly to all prior parties, or only to his immediate predecessor on the paper. In the latter case, such predecessor has the same time to give notice to his indorser as though he himself had been the holder and had the paper protested.

6. ———— *Banker, or Agent, as Holder for Collection.* A banker or agent to whom paper has been transmitted for the purpose of obtaining acceptance, or payment, is, so far as the question of notice is concerned, to be considered as though he were the real holder, and his principal a prior indorser.

7. ———— A note payable in Topeka was, on August 5th, legally protested there, and notice thereof forwarded by mail, by the bankers who held the note for collection, to the owners at Fort Scott. Notice when received was sent by them by mail to the indorser at Atchison. It took a letter two days to go by mail from Topeka to Fort Scott, and two days to go in like manner from Fort Scott to Atchison. The indorser received the notice on August 10th. The 9th was Sunday. *Held,* That a finding that legal notice had been given must be sustained, although it appeared that there was a daily mail between Topeka and Atchison, and that all parties except the notary knew where the indorser resided, and although it was not shown at what exact hour the notice was deposited in the post-office at Topeka, or at Fort Scott, or received by the owners,

or by the indorser, or what hours the mail left Topeka, or Fort Scott, or reached Fort Scott, or Atchison.

8. PLEADING; *Allegations of Petition, Not Challenged by Motion, or Answer.* Where a petition alleges that plaintiffs are the assignees in bankruptcy of a corporation, and have full authority to prosecute and maintain the action, that the defendant indorsed the note sued on to them as such assigns, (giving copy of the indorsement,) and that they are now the holders and owners thereof, and these allegations are not challenged by motion or answer, *held,* that a judgment in favor of the plaintiffs would not be reversed because the petition failed to allege any indebtedness of the indorser to the corporation, or any special authority from the bankrupt court to the assignees to discount notes.

*Error from Atchison District Court.*

ACTION by *G. A. Scovill* and *T. H. Annable* as assignees of the Fort Scott Coal and Mining Company, against the Topeka Rolling-Mill Company and *John Seaton.* The action was upon a promissory note, a copy of which is given in the opinion, *infra.* The Rolling-Mill Company was sued as maker, and *Seaton* as indorser.[1] Trial at the December Term 1874 of the district court. Judgment in favor of plaintiffs against both defendants for $291.50, and costs. *Seaton* appeals, and brings the case here. The errors assigned are stated in the opinion. Elaborate briefs were filed, but as the points submitted and authorities cited are fully stated in the opinion, the briefs are omitted. [After the subjoined opinion was filed, a motion for a rehearing was made and argued, and overruled.]

*D. Martin,* for plaintiff in error.

*Everest & Waggener,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action upon a promissory note, of which the following is a copy:

$250.00.       TOPEKA, KANSAS, JUNE 24th, 1874.

Thirty-nine days after date, we promise to pay to the order of John Seaton, at the Topeka Bank and Savings Institution, Topeka, Kansas, two hundred and fifty dollars with interest at twelve per cent. per annum after due until

paid.  *Also, costs of collecting, including reasonable attorney-fees, if suit be instituted on this note.   Value received.*

TOPEKA ROLLING-MILL COMPANY,
*By R. D. Coldren, Prest.*

And the first question presented is, whether this is a negotiable note.   And the claim is, that because of the stipulation for payment of costs of collection, and attorney-fees, the amount due on the paper is uncertain, while both the common law and the statute define negotiable paper as drawn for

1. Rule as to negotiability.  a "sum or sums of money certain." Story on Prom. Notes, § 1;  Gen. Stat., § 1, p. 114.   This claim cannot be sustained.   The amount due at the maturity of the paper, is certain; and the only uncertainty is in the amount which shall be collectible in case the maker defaults at the maturity of the paper in his promise to pay, and the holder is driven to the necessity of instituting a suit for collection, and then only as to the expenses of such collection. In the case of *Sperry v. Harr*, 32 Iowa, 184, the stipulation in the note was: "If not paid when due, and suit is brought thereon, I hereby agree to pay collection and attorney-fees therefor;" and the note was held to be negotiable. The court says in the opinion: "The agreement for the pay-

2. Stipulations, in notes.  ment of attorney-fees in no sense increased the amount of money which was payable when the note fell due, and we are unable to see that it rendered that amount uncertain in the least degree.   It simply imposed an additional liability *in case* suit should be brought; and such liability did not become absolute until an action was instituted. This agreement relates rather to the remedy upon the note, if a legal remedy be pursued to enforce its collection, than to the sum which the maker is bound to pay.   It is not different in character from a cognovit, which when attached to promissory notes does not destroy their negotiability."   The same proposition is affirmed in *Garr v. Louisville Bank Co.*, 11 Bush, (Ky.) 180, in which the court declares, that "the reason for the rule, that the amount to be paid must be fixed and certain, is, that the paper is to become a substitute for

money; and this it cannot be, unless it can be ascertained from it exactly how much money it represents. As long therefore as it remains a substitute for money, the amount which it entitles the holder to demand must be fixed and certain; but when it is past due, it ceases to have that peculiar quality denominated negotiability, or to perform the office of money; and hence, anything which only renders its amount uncertain after it has ceased to be a substitute for money, but which in nowise affected it until after it had performed its office, cannot prevent its becoming negotiable paper." *Dietrich v. Baylie*, 23 La. An. 767; *Stoneman v. Pyle*, 35 Ind. 103. That it is no longer an open question in the latter state, is evident from the cases of *Wyant v. Pottorf*, 37 Ind. 512, and *Walker v. Woolen*, vol. 4 Cent. Law J. 248. See also *Dinsmore v. Duncan*, 57 N. Y. 573, and *Zimmerman v. Anderson*, 67 Penn. St. 421 — in which last case a stipulation waiving appraisement, stay of execution, etc., was held not to affect the negotiability of the paper. *Bradley v. Lill*, 4 Bissell, 473, in which the promise was to pay a certain amount with exchange, and the amount of the exchange not stated, and still it was held to be negotiable. And on same point see *Smith v. Kendall*, 9 Mich. 241; *Johnson v. Frisbie*, 15 Mich. 285; *Leggett v. Jones*, 10 Wis. 34; *Gutacap v. Woolwise*, 2 M'Lean, 581. (Contra, *First National Bank v. Gay*, 63 Mo. 33.) It seems to us therefore a just conclusion, that paper otherwise negotiable is not rendered non-negotiable by a stipulation for the payment of costs of collection, including attorney-fees, in case suit is brought thereon.

A second proposition of plaintiff in error is, that if the note be considered negotiable, notice of nonpayment was not given within a reasonable time, so as to charge the indorser. The evidence upon this point showed, that the protest was made August 5th, and that the said John Seaton did not

3. Indorsers; protest; proof of notice. receive notice thereof until the 10th; that said John Seaton resided in Atchison, Kansas, within the knowledge of all the parties except the notary at Topeka making protest, and was in business there, and attended the

post-office two or three times every day; that Atchison was and is the terminus of the Atchison, Topeka & Santa Fé railroad, a daily mail-route, and is also the terminus of the Missouri Pacific (or Atlantic & Pacific) railroad, a daily mail-route; that Topeka is situated on said Atchison, Topeka & Santa Fé railroad, fifty miles from Atchison; that the notice to said John Seaton was transmitted in the same envelope with the certificate of protest to the plaintiffs, at Fort Scott, where they resided, and said notice was sent by the plaintiffs to the said John Seaton, and that it took two days for a letter to go by mail from Topeka to Fort Scott, and two days from Fort Scott to Atchison, and that said note was placed in a Topeka bank, at Topeka, for collection and protest if not paid when due, and was in said bank when so due, and after protest was returned to plaintiffs at Fort Scott. No question is made upon the protest, providing the note was negotiable.

Upon this we remark, that it rests upon the party seeking to charge an indorser to prove a legal notice. No presumptions arise in his favor. It is a question of fact, and the *onus probandi* is upon him. But like any other question of fact, it is to be settled upon the testimony as it is given, and need not be proved beyond the possibility of mistake. A reasonable construction must be given to the testimony, and reasonable inferences may be drawn from it. And if from this it appears that legal notice was given, it will be sufficient, although it at the same time appears that further testimony more full, explicit, and definite might possibly show an unwarrantable delay on the part of some one of the various parties. We are not to presume facts that are not proven, and we may rest upon the testimony given, and any reasonable inferences to be drawn from it. We remark again, that where the holder and the party to whom notice is to be given reside at different places, it is generally sufficient if notice is sent by the mail of the day next succeeding the day of dishonor. *Williams v. Smith*, 2 B. & Ald. 501; *Bray v. Haduen*, 5 Maule & Selwyn, 68; *Bank of Alexandria v. Swan*, 9 Peters, 33. It is sometimes said

4. When notice to be served.

that it must go by the next practicable mail; and on the other hand, where the mail of the next succeeding day starts at an unseasonable hour, it will be sufficient if it is deposited in the post-office at any time on that day, so as to be ready for the mail of the succeeding day. Our statute says, "within a reasonable time." (Gen. Stat. p. 115, § 7.) What is "a reasonable time," is generally a question of law for the courts. Byles on Bills, 222, and cases in note; 2 Greenl. Evidence, § 186. We are not in this case advised as to the hour of the departure of the mail from Topeka for Fort Scott, or from Fort Scott for Atchison; and so no question of the seasonableness or unseasonableness of such hour is before us. We can then only fall back upon the general rule, that the notice must be deposited in the post-office in time for the mail of the next succeeding day. In other words, the protest having been on the 5th, the notice must have left Topeka in the mail of the 6th, or at least been deposited in the post-office in time for such mail. Again, the holder of

5. Notice, by holder, and intermediate indorser.

protested paper is not obliged to give notice to all prior parties. He may simply give notice to his immediate predecessor on the paper, and then such predecessor has the same time in which to notify his predecessor, and so on. So that where there are many parties to dishonored paper, the first indorser may not receive notice of the dishonor for weeks, or months, thereafter, and that too although all the parties reside in the same vicinity. In the case before us, it is entirely immaterial whether the notary did or did not know of the residence of John Seaton; or whether said Seaton resided nearer to Topeka than Fort Scott, the residence of plaintiffs. *Eagle Bank v. Hathaway*, 5 Metcalf, 212; *Triplett v. Hunt*, 3 Dana, 128; *Farmer v. Rand*, 4 Shep. 453; 3 Kent's Comm. 106, and note; 2 Greenl. on Ev., § 187; 1 Parsons on Notes and Bills, 513. And again, a banker or agent to whom the paper has been

6. Banker, and agent.

transmitted for the purpose of obtaining acceptance or payment, is, so far as the question of notice is concerned, to be considered as though he were the

real holder, and his principal a prior indorser. He may notify only his principal, and such principal has the same amount of time in which to give notice to prior parties. 1 Am. Lead. Cases, side page 394; 2 Greenl. Ev., § 187a; Byles on Bills, 224.

Now applying these principles to the case, and it was proper for the notary at Topeka to forward notices to plaintiffs at Fort Scott, without mailing any directly to Seaton, at Atchison, and whether he did or did not know of Seaton's place of residence. Notice leaving Topeka by the mail of the 6th, would reach Fort Scott on the 7th; leaving Fort Scott on the 8th, would reach Atchison on the 9th. It was received by Seaton on the 10th. But the 9th was Sunday, so that he received it on the very day that he should have received it, going by the first mail, and in the usual time. It is true, that the testimony fails to disclose the exact hours at which the notice was mailed at Topeka, or at Fort Scott; or of the departure of the mails from those places; or of the arrival of the mails at Fort Scott, or Atchison; or the receipt of the notice by plaintiffs, or Seaton. And if all these facts were disclosed, it might possibly appear that there was either on the part of the notary at Topeka, or of the plaintiffs at Fort Scott, such a delay in forwarding notice as would discharge the indorser. But upon the testimony as it stands, we think there was no error in finding that due diligence had been used in giving notice. 1 Parsons on Notes and Bills, 517, and cases cited in note.

*7. Application of rules.*

A final proposition of the learned counsel for plaintiff in error is, that "neither the pleadings nor the proofs show any right of the plaintiffs below to recover against Mr. Seaton." The petition alleges that plaintiffs are the assignees in bankruptcy of the Fort Scott Coal & Mining Company; that they have full power and authority to prosecute this action, and that John Seaton indorsed and transferred to plaintiffs said note, (giving copy of indorsement,) and that they are now the holders and owners thereof. No denial is made of these allegations. It is said by counsel,

*8. Pleading; when sufficient.*

that it does not appear that Seaton was ever indebted to the coal company, and that assignees in bankruptcy have no general power or authority to discount notes, etc., in behalf of their estates, and that no special authority from the bankrupt court is alleged. It is unnecessary to inquire whether the petition could not have been attacked by motion, or the authority of plaintiffs challenged by answer. Nothing of the kind was attempted. The defendant was content to go into trial upon the admission (by failure to deny) that plaintiffs were the owners and holders of the paper, that they acquired title to it by indorsement to them, and that they had full authority to prosecute and maintain this action. As they could not be the owners and holders without having authority to receive title by the indorsement, and as it is not questioned but that under some circumstances they could legally take title to such paper, we think the general allegations of the petition, unchallenged by motion, answer, or evidence, are sufficient to sustain the judgment.

Upon the whole record we see no error, and the judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting in the case.