MERCHANTS' NAT. BANK *v.* SEVIER and another.

(*Circuit Court, E. D. Arkansas.* October Term, 1882.)

**1. PROMISSORY NOTE—VOID PROVISION IN.**

A provision in a promissory note "to pay an attorney's fee of 10 per cent. on the amount due if suit is brought to enforce payment, for use of the attorney bringing the suit," is a stipulation for a penalty or forfeiture, and tends to the oppression of the debtor; is a cover for usury, and is without consideration and contrary to public policy, and void.

**2. SAME—BANK CHARTER.**

Such a stipulation in a note discounted by a national bank is void, for the further reason that it is in excess of the powers of the bank under its charter.

**3. SAME—POINT NOT DECIDED.**

Whether such a stipulation in a note discounted by a national bank has the effect to avoid the whole instrument, not decided.

At Law.

*B. C. Brown,* for plaintiff.

*M. M. Cohn,* for defendants.

CALDWELL, D. J. The Merchants' National Bank of Little Rock brought suit in this court against the defendants on a note of which the following is a copy:

"$500.                     LITTLE ROCK, ARKANSAS, January 7, 1880.

"Sixty days after date, we, or either of us, promise to pay to the order of the Merchants' National Bank $500, for value received, negotiable and payable without defalcation or discount at the Merchants' National Bank of Little Rock, Arkansas, with interest from maturity at the rate of 10 per cent. per annum until paid; and in the event payment is not completely made at maturity, the undersigned further agree to pay an attorney's fee of 10 per cent. on the amount due and unpaid if suit is brought to enforce payment of this note, and its interest, or any part that may remain due and unpaid, which said fee shall become due and recoverable in the action brought to enforce the payment of this note for the use of the attorney bringing said suit.

"A. H. SEVIER,
"T. J. CHURCHILL."

The defendant Churchill has filed a demurrer to the complaint, assigning several grounds of demurrer, but all based on the stipulation contained in the note to pay an attorney's fee. The effect of inserting such a stipulation in a promissory note has been much discussed by the courts. Adjudged cases may be found supporting every conceivable view of the question. One line of cases holds that such a stipulation is a penalty, and does not make the note usurious, because the maker has the right to pay the principal and avoid the penalty. *Cutler* v. *How,* 8 Mass. 257; *Lawrence* v. *Cowles,* 13 Ill.

577; *Billingsley* v. *Dean*, 11 Ind. 33; *Gaar* v. *Louisville Banking Co.*
11 Bush, 180. Other cases hold that it destroys the negotiability of
the note, making it a mere contract. *Banking Co.* v. *Gay*, 63 Mo. 33;
*First Nat. Bank of Carthage* v. *Jacobs*, 73 Mo. 35; *Samstag* v. *Conley*,
64 Mo. 476; *First Nat. Bank of Carthage* v. *Marlow*, 71 Mo. 618;
*Woods* v. *North*, 84 Pa. St. 407; *Farquhar* v. *Fidelity Ins. Co.* (U. S.
C. C. D. Pa.) 35 Leg. Int. 404; S. C. 7 Cent. Law J. 334; *Jones* v.
*Radatz*, 27 Minn. 240; S. C. 11 Cent. Law J. 512; [S. C. 6 N. W.
Rep. 800.] And in others, it is held that it does not affect its nego-
tiability. *Seaton* v. *Scovill*, 18 Kan. 435; S. C. 5 Cent. Law. J. 184;
*Stoneman* v. *Pyle*, 35 Ind. 103; *Sperry* v. *Horr*, 32 Iowa, 184; *How-
enstein* v. *Barnes*, 5 Dill. 482; 1 Daniel, Neg. Inst. 49.

Some courts hold that such a stipulation is valid and will be en-
forced. *Clawson* v. *Munson*, 55 Ill. 394; *Smith* v. *Silvers*, 32 Ind.
321; *McIntire* v. *Cagley*, 37 Io. 676; *Siegel* v. *Drum*, 21 La. Ann.
8; *Wilson Sewing-mach. Co.* v. *Moreno*, 6 Sawy. 35; S. C. 7 FED.
REP. 806; 1 Daniel, Neg. Inst. 49. Other courts, whose opinions
are entitled to the highest consideration, hold that such a provision
is a stipulation for a penalty or forfeiture, tends to the oppression of
the debtor and to encourage litigation, is a cover for usury, is with-
out any valid consideration to support it, contrary to public policy,
and void. *Bullock* v. *Taylor*, 39 Mich. 137; *Meyer* v. *Hart*, 40
Mich. 517; *Witherspoon* v. *Mussulman*, 14 Bush, 214; *Shelton* v. *Gill*,
11 Ohio, 417; *Martin* v. *Trustees Belmont Bank*, 13 Ohio, 250; *Dow*
v. *Updike*, 11 Neb. 95; [S. C. 7 N. W. Rep. 857;] 2 Pars. Notes &
Bills, 414. And see to same effect note to *Jones* v. *Radatz*, 11 Cent.
Law J. 513; 12 Cent. Law J. 337; 14 Amer. Law Rev. 858, where
it is said:

"It seems to us to be more consistent with public policy to consider all
such agreements as absolutely void. They can readily be used to cover usu-
rious agreements, and excessive exactions may be made under the guise of an
attorney fee."

The doctrine of the cases last cited accords with sound reason and
justice, and has our approval. It would serve no useful purpose to
review the cases in detail. There is nothing new to be said upon
the subject. The comprehensive and forcible reasoning of Mr. Jus-
tice COOLEY in *Bullock* v. *Taylor, supra,* cannot be successfully an-
swered:

"A stipulation for such a penalty, we think, must be held void. It is op-
posed to the policy of our laws concerning attorneys' fees, and it is suscepti-
ble of being made the instrument of the most grievous wrong and oppression.

It would be idle to limit interest to a certain rate, if, under another name, forfeitures may be imposed to an amount without limit. The provision in those notes is as much void as it would have been had it called the sum imposed by its true name of forfeiture or penalty. There is no consideration whatever that can support it."

The cases which treat such a stipulation as an agreement to pay liquidated damages, and not as a forfeiture or penalty, are unsound in principle. Their reasoning destroys the efficacy of every statute and rule of decision intended to protect debtors from the demands of grasping creditors. If a stipulation for an attorney's fee can be upheld upon the ground that it is a valid agreement upon sufficient consideration for the payment of a liquidated sum, it is not perceived why a stipulation to pay the taxes of the payee, or his office rent, or the salary of his collector, or all of these and as many more as the genius of a rapacious creditor may devise, should not be upheld and enforced by the same mode of reasoning. Mr. Justice SHARSWOOD, in *Woods* v. *North, supra*, following Chief Justice GIBSON, characterizes such a provision as "luggage," which negotiable paper is unable to carry, and pertinently inquires: "If this collateral agreement may be introduced with impunity, what may not be?"

In Daniel, Neg. Inst. 49, it is said this inquiry "is answered by the assertion that such provisions facilitate rather than incumber the circulation of such instruments; they are not 'luggage,' but ballast." Mr. Daniel's assertion is in the teeth of many adjudged cases, among which are well-considered judgments of such eminent jurists as Chief Justice GIBSON, Mr. Justice SHARSWOOD, and Mr. Justice COOLEY. It will require something more than assertion to overthrow a doctrine supported by such high authority. Undoubtedly, if it is once understood that courts will uphold and enforce such stipulations, we shall presently see notes so weighed down with this kind of "ballast," that the provisions to pay the debt and interest will be but a part of the obligation incurred by the debtor in signing the note. The "ballast" will become of more importance than the ship itself. The plaintiff in this case lately sued on a note in this court which contained a stipulation "to pay the attorney's fee, court costs, and all other expenses in enforcing the collection of this note," and it was gravely insisted in argument in that case that the defendant was liable to pay the hire of a horse and buggy, and the wages and expenses of the plaintiff's collector for the time consumed in going to demand payment of the note after it fell due. And if the reasoning in *Mc-*

*Intire* v. *Cagley, supra,* and other cases of that kind is sound, the contention in the case mentioned would not seem to be extravagant.

The suggestion of some of the courts, which maintain the validity of such a provision, that the fee stipulated for must be reasonable in amount, and that the court should reduce it when in its opinion it is excessive, only proves the unsoundness of the doctrine. For if the parties can lawfully stipulate for the payment of an attorney's fee, in addition to the principle and interest of the debt, and the costs and fees allowed by law, then they can agree upon the amount of the fee, and the court has no more power over such a contract than it has over any other contract entered into between parties capable of contracting. Interest is the only damages the law allows for delay in the payment of money, (*Loudon* v. *Taxing District,* 104 U. S. 771,) and in case of suit the only fees and costs that can be recovered are those allowed by law.

But if it were conceded that natural persons had the right to insert such a provision in a note, it does not follow that the plaintiff in this case would have that right. The plaintiff and payee in the note is a national bank. Corporations have only such powers as are specially granted by the act of incorporation, or as are necessary for carrying into effect the powers expressly granted. The specific power given to national banks is "to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes."

In *Nat. Bank* v. *Johnson,* 104 U. S. 277, the supreme court, construing this clause of the charter, say: "So the discount of negotiable paper is the form according to which they are authorized to make the loans; and the terms 'loans' and 'discounts' are synonyms." And it is further said in the same case that "the sole particular in which national banks are placed on an equality with the natural persons is as to the *rate* of interest, and not as to the character of contracts they are authorized to make. * * *"

The authority given to the bank by its charter to make loans and discounts, contemplates loans and discounts as understood in commercial law, and according to the known usage and practice of banks. Applying these tests, we find such a stipulation is no part of a negotiable promissory note or bill of exchange.

It is a significant fact that of all the forms of bills and notes given in the books, not one contains such a provision. It is comparatively

of modern origin. It is the invention of cunning shavers, and one of the methods by which they seek to fleece their victims. It is an exotic in commercial and banking circles, where business is conducted according to commercial usage, and with that integrity and fairness usually characterizing the dealings of banks and business men. This is the first instance that has come under our observation where this bad invention has found its way to the discount board of a national bank.

The exigencies of a bank may require the speedy negotiation of its securities to raise money to meet runs or other unexpected demands upon its vaults, and no stipulation in its securities, acquired by loan or discount, should be sanctioned which would render them non-negotiable, or of doubtful negotiability or validity. "The discount of *negotiable* paper is the form according to which they are authorized to make their loans." *Nat. Bank* v. *Johnson, supra.* The national banking act requires loans to be made "on personal security," and the uniform usage and practice of banks, conducted on sound banking principles, is to make their loans on short time and require payment or renewal at maturity. But if a bank is permitted to insert such a stipulation in its notes, it is obvious that the attorney of the bank, one of its most important and influential advisers and agents, at once becomes interested in having the makers of every note containing the stipulation make default in payment. It will be observed that the provision is that the 10 per cent. shall be "for the use of the attorney bringing the suit." This is offering the attorney of the bank a premium of 10 per cent. on all overdue notes upon which "suit is brought." The inevitable tendency is to foment and encourage litigation, which the law abhors.

That such a stipulation is in excess of the power of a national bank is shown by that provision of the national banking act which declares that the discount of a bill of exchange, payable at another place than the place of such discount, at the current rate of exchange, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest than is allowed by the act. Section 5197, Rev. St. If this express provision was deemed necessary in order to enable banks to stipulate for the payment of the current rate of exchange between the place where the bill is discounted and the place where it is payable, it cannot be maintained, with any fair show of reason, that banks possess the implied power to stipulate for an attorney's fee of 10 per cent. if the bill is not paid at maturity. The power to insert such a provision is not given in express terms, and

cannot be implied. It is not necessary to the exercise of any legitimate function of the bank, and is contrary to the usage and practice of banks conducted on sound and legitimate banking principles. And in addition, therefore, to the reasons which render such a stipulation void where the payee is a natural person, it is void in the case of the bank for the further reason that it is in excess of the powers of the bank under its charter. The question whether such a stipulation has the effect, in the case of a national bank to avoid the whole instrument, was waived by counsel, and will not be considered by the court.

Let the plaintiff have judgment for the principal and interest of the note, and no more.

McCRARY, C. J. I fully concur in the conclusion announced in the foregoing opinion, and in the reasoning by which it is supported. In construing and enforcing contracts made or to be performed in a state where a different rule has become established law, I might be inclined to abide by the local adjudications, but the doctrine of the foregoing opinion will be followed in all cases not falling within this exception, unless the supreme court shall otherwise decide.

---

It is common, especially in the west, to write provisions in promissory notes and bills of exchange agreeing to pay, besides principal and interest, a sum for attorney fees or other expenses of collection. Sometimes a percentage of the principal is so agreed to be paid; again only "reasonable" fees or expenses are stipulated for. These provisions will be considered with reference to—

    I. COSTS.
    II. USURY.
    III. PENALTY.
    IV. CERTAINTY OF AMOUNT AND NEGOTIABILITY.

I. COSTS. It has been questioned whether a stipulation in a note for attorney fees is valid as an allowance of costs agreed upon by the parties. In Nebraska an allowance of stipulated attorney fees as costs appears to have been sanctioned by statute. Gen. St. Neb. 98; *Heard* v. *Dubuque Co. Bank*, 8 Neb. 13. But when this statute was repealed, the supreme court of Nebraska, in *Dow* v. *Updike*, 11 Neb. 97, intimated that such fees were not allowable as costs. "Costs are not allowed in this state unless authorized by statute," said the court. This decision followed *State* v. *Taylor*, 10 Ohio, 378, wherein it was said that "at common law no costs were allowed. If a plaintiff failed in his action, he was amerced for his false clamor, but costs were not adjudged against him. In Ohio, no costs are given to a successful party unless authorized by statute," etc. The supreme court of Michigan, in *Bullock* v. *Taylor*, 39 Mich. 140, passing upon the question, say: "In this state the attorney's

fees which the successful party is permitted to recover in courts of record are prescribed by statute or by rule of court. In justices' courts none are given, except in a few special cases. The policy of our law is to limit such recovery to a very moderate sum, in every case where it is permitted at all. * * * And it is a question of very grave importance whether the policy which thus limits attorney's fees * * * can be set aside by provisions like that under review." The stipulation was held void, because, among other reasons, "it is opposed to the policy of our laws concerning attorney's fees," etc., per COOLEY, J. This was affirmed by the same court in *Myer* v. *Hart*, 40 Mich. 522, wherein it was objected that the provision for payment of an attorney fee fixed its amount arbitrarily, without regard to the services performed, and also that it tended to hasten the commencement of proceedings and to promote litigation. The drift of these authorities is obviously against the allowance of stipulated attorney fees as costs.

Judge DEADY, in *Bank of British North America* v. *Ellis*, 6 Sawy. 105, took a different view. "At common law," said he, "the compensation of an attorney consisted in the various items allowed for his services, called collectively his 'costs;' and in case his client prevailed in the action these were collected off the adverse party as a part of the judgment."

"Substantially this stipulation for an attorney's fee is a substitute for the allowance of costs at common law, and enables a party taking a negotiable instrument to provide, by agreement with the maker or indorser thereof, that if the same is not paid without suit, the holder shall recover his attorney's fee, as well as the principal and interest."

The supreme court of Indiana, in *Billingsley* v. *Dean*, 11 Ind. 331, (affirmed in *Churchman* v. *Martin*, 54 Ind. 387,) took the view that "the agreement * * * is reasonable, and there is certainly no good reason why an agreement on the part of the debtor to pay an expense resulting from his own act should not be valid in law."

These conflicting cases leave the question in a somewhat unsatisfactory state. It is believed, however, that a stipulation in a note to pay attorney's fees is not invalid as an agreement to pay costs. The decisions holding it to be invalid are not conclusive, because in each of them the invalidity was ultimately rested upon other grounds. What is said as to the invalidity of the stipulation, as an agreement to pay costs, is merely *obiter*. Reason seems to favor the validity of such an agreement. Why should not a debtor pay expenses which his failure to meet his obligations occasioned? Why may he not be permitted to agree so to do? The law sanctions such agreements in mortgages. *Hitchcock* v. *Merrick*, 15 Wis. 522; *Cox* v. *Smith*, 1 Nev. 161; *Bronson* v. *La Crosse R. Co.* 2 Wal·. 283; *Pierce* v. *Kneeland*, 16 Wis. 672; *Simon* v. *Haifleigh*, 21 La. Ann. 607; *Rawson* v. *Hall*, 56 Me. 142; *Rice* v. *Cribb*, 12 Wis. 179; *McLane* v. *Abrams*, 2 Nev. 199; *Clawson* v. *Munson*, 55 Ill. 394; *Thalen* v. *Duffy*, 7 Kan. 405; *Williams* v. *Meeker*, 29 Iowa, 292; *Nelson* v. *Everett*, 29 Iowa, 184; *Sharp* v. *Baker*, 11 Kan. 381; *Jones* v. *Schulmeyer*, 39 Ind. 119; *Maus* v. *McKillip*, 38 Md. 241; *Whitmore* v. *Reynolds*, 46 Cal. 380. Reasoning by analogy, it is difficult to perceive why, if a stipulation to pay attorney's fees and other expenses of suit is valid in a mortgage, such a stipulation is not valid in a note or bill of exchange.

The point was decided in *Miner* v. *Paris Exchange Bank*, 53 Tex. 561, wherein the stipulation to pay the usual attorney's fees in the event suit had to be instituted to enforce the contract was held legal, and founded on a valuable consideration. Such fees, it was said, though not an element of damages in an ordinary suit for the collection of money, could be made such by an express contract. Assuming the stipulation to be valid, it has been held not to apply to the expenses incurred in ordinary dunning. *Wetherbee* v. *Kusterer*, 41 Mich. 359. The prosecution of the claim against the estate of the maker, where payment is resisted by the administrator, is such an action as will authorize the allowance of the stipulated fee for collection. *Davidson* v. *Vorse*, 52 Iowa, 384.

The court cannot fix the amount to be allowed as fees or costs without evidence thereof. *Wyant* v. *Pottorf*, 37 Ind. 513; *First Nat. Bank* v. *Krance*, 50 Iowa, 236.

The stipulation in the note or bill is for the benefit of the parties to the instrument, and not for the use of the attorney who may collect it. He cannot sue upon it. As to him it is a promise without consideration; a nude pact.

II. USURY. It has been asked whether a stipulation to pay attorney fees, or other expenses of collecting a note or bill of exchange, does not render it usurious. Several decisions reply affirmatively. Thus in Virginia, (*Toole* v. *Stephen*, 4 Leigh, 581;) and in Nebraska, (*Dow* v. *Updike*, 11 Neb. 95,) wherein Mr. Chief Justice MAXWELL held the stipulation void as usurious, saying : " The reason is, the law fixes a limitation to the amount to be paid for the use of money. If the borrower may be compelled to pay 10 per cent. collection fees in addition to lawful interest, in case suit is brought, could not a contract to pay 10, 20, or greater per cent., as liquidated damages, in case of a failure to pay promptly at the day the debt became due, be enforced, and thus the law regulating the rate of interest be virtually repealed ?"

A similar view was taken in *Bullock* v. *Taylor*, 39 Mich. 140, wherein it was stipulated to pay an attorney fee of $15 dollars each for collecting notes of $41.50 each. "These stipulations," say the court " * * * provided for the payment of a sum equal to 35 per centum, however brief might be the period of default. * * * It would be idle to limit interest to a certain rate, if under another name forfeitures may be imposed to an amount without limit."

The question came before the United States circuit court in *Wilson S. M. Co.* v. *Moreno*, 6 Sawy. 38. Said DEADY, J.: " The ruling that such a stipulation makes the note usurious is founded upon the unauthorized assumption of fact that the sum agreed to be paid as attorney's fee in case the note is not paid at maturity is not what it purports to be, but illegal interest in the disguise thereof. Of course, where it appears that such is the real nature of the transaction, it should be treated accordingly. But the fact cannot be assumed any more than that a like sum of the alleged principal is illegal interest in disguise. Accordingly, the tendency of the decisions hostile to this stipulation is to leave these untenable grounds, and hold it void upon the ground that it is a convenient device for usury, and tends to the oppression of the debtor; and it may be admitted that this suggestion is not without force, particularly in cases where the amount provided is largely in excess of what such collec-

tion could ordinarily be made for. But a court assumes to make the law, rather than declare it, when it pronounces such a contract void, not because it is prohibited or intrinsically wrong, but because it may be used as a cover for usury and a means of oppressing the debtor." In this case the stipulation was not held usurious.

Nor is the money or percentage agreed to be paid believed to be usury. Usury is the taking of more for the use of money than the law allows. Now, the sum agreed to be paid by the stipulations under discussion is not paid for the use of money, but for the expense of collecting it. If there is no expense incurred therein the debtor need pay nothing. He may avoid it by paying his obligation with lawful interest at maturity. The point was directly decided in *Gaar* v. *Louisville Bkg. Co.* 11 Bush, (Ky.) 189, wherein the stipulation was held not to be an agreement to pay usurious interest. But the court thought it was an agreement to pay a penalty, (and to the same effect, see *Witherspoon* v. *Musselman*, 14 Bush, 214; *Rilling* v. *Thompson*, 12 Bush, 310; *Thommasson* v. *Townsend*, 10 Bush, 114,) and pointed out the difference between usury and penalty. "Whenever the debtor," said the court, "by the terms of his contract, can avoid the payment of a larger by the payment of a smaller sum at an earlier day the contract is not usurious, but the difference between the two sums is a penalty; Blydenburg, Usury, 39; *Cullen* v. *How*, 8 Mass. 257; *Moore* v. *Hilton*, 1 Dev. Eq. 429; Tyler, Usury, 97; *Jordan* v. *Lewis*, 2 Stewart, 426. But when he cannot discharge his contract, according to its terms, at maturity, by the payment of the debt and lawful interest, the contract is usurious."

It is concluded that stipulations to pay attorney fees and similar expenses are not agreements to pay usury. But if the note is in other respects usurious, the attorney fee cannot be recovered; the usury vitiates the entire contract. *Miller* v. *Gardner*, 49 Iowa, 234.

III. PENALTY. As just stated, these stipulations have been held to provide for penalties. *Gaar* v. *Louisville Bkg. Co. supra*. They do not, however, amount to provisions for stipulated damages over which the courts have no control. This was decided by Mr. Justice SHARSWOOD in *Daly* v. *Maitland*, 88 Pa. St. 384. Said he: "This principle of liquidated damages is not applicable to a contract for a loan of money; at least, such stipulation is subject to the control of courts of equity." The same jurist, in *Woods* v. *North*, 84 Pa. St. 407, said again: "It is a mistake to suppose that if the note was unpaid at maturity, the 5 per cent. would be payable to the holder by the parties. It must go into the hands of an attorney for collection. It is not a sum necessarily payable. The phrase " collection fee " necessarily implies this. Not only so, but this amount of percentage cannot be arbitrarily determined by the parties. It must be only what would be a reasonable compensation to an attorney for collection. This, in reason and the usage of the legal profession, depends upon the amount of the note. Five per cent. would probably be considered by a jury as a reasonable compensation upon the collection of a note of $377. But if it were $3,000 they would probably think otherwise, and certainly so if it were $30,000."

In *Johnston* v. *Speer*, 92 Pa. St. 228, a stipulation to pay attorney's commissions was held equivalent to a contract to pay damages—reasonable damages,

or such damages as a court at its discretion might fix. Whence it is concluded that as penalties these agreements to pay costs and attorney fees are not enforceable; that is to say, where 5, 10, or any other percentage, or any specified sum, is stipulated to be paid, the courts will not compel the payment of that sum absolutely, but only so much of it as amounts to reasonable fees or expenses.

IV. CERTAINTY OF AMOUNT AND NEGOTIABILITY. A number of cases present the question whether the insertion in a note or bill of exchange of an agreement to pay attorney fees, or other expenses of collection, renders the instrument uncertain in amount and destroys its negotiability.

The point was decided in *First Nat. Bank* v. *Gay*, 63 Mo. 33. As to the matter of certainty of amount in a negotiable instrument the court said "no little stringency is exhibited by the cases." The instrument was held "not precise as to the amount to be paid" and not "a promissory note." The court admitted that some authorities held differently, but it regarded them "as seriously endangering elementary principles and definitions."

The supreme court of Pennsylvania spoke more definitely. In *Woods* v. *North*, 84 Pa. St. 407, it decided that the insertion in a promissory note of the clause "and 5 per cent. collection fees if not paid when due," rendered the note uncertain in amount, destroyed its negotiability, and relieved the indorser from liability thereon. Said Mr. Justice SHARSWOOD: "But in the paper now in question there enters as to the amount an undoubted element of uncertainty." He then pointed out that the stipulation for 5 per cent. could not be enforced, except to compel the payment of reasonable fees or expenses, the amount of which would have to be determined by a jury, and consequently that such amount was an uncertain sum. "How, then," continued he, "can this note be said to be certain as to its amount, or that amount unaffected by any contingency? Interest and costs of protest, after non-payment at maturity, are necessary legal incidents of the contract, and the insertion of them in the body of the note would not affect its negotiability. Neither does a clause waiving exemption, for that in no way touches the simplicity and certainty of the paper. But a collateral agreement, as here, depending too, as it does, upon its reasonableness, to be determined by the verdict of a jury, is entirely different. It may be well characterized, like an agreement to confess a judgment was by Chief Justice GIBSON, as 'luggage' which negotiable paper, riding as it does on the wings of the wind, is not a courier able to carry. If this collateral agreement may be introduced with impunity, what may not be? It is the first step in the wrong direction which costs. These instruments may come to be lumbered up with all sorts of stipulations, and all sorts of difficulties, contentions, and litigation result. It is the best rule, *obsta principiis*." The preceding decisions are sustained by the following authorities: *Johnston* v. *Speer*, 92 Pa. St. 227; *First Nat. Bank* v. *Bynum*, 84 N. C. 24; *First Nat. Bank* v. *Marlow*, 71 Mo. 619; *Samstag* v. *Conley*, 64 Mo. 476; *First Nat. Bank* v. *Jacobs*, 73 Mo. 35; *Farquhar* v. *Fidelity*, etc., *Deposit Co.* 7 Cent. Law J. 334; *Jones* v. *Radatz*, 27 Minn. 240.

In Indiana a statute was enacted "that any and all agreements to pay attorney fees, depending upon any condition therein set forth, and made part of any bill of exchange, acceptance, draft, promissory note, or other written evi-

dence of indebtedness, are hereby declared illegal and void." 1 Rev. St. Ind. 1876, p. 149, act March 10, 1875. The supreme court of Indiana said that to prohibit the making of certain contracts is not to impair the obligation of contracts already in existence. It decided the statute constitutional, and held that an agreement in a note to pay "10 per cent. attorney fees if suit be instituted on this note," was illegal and void under this statute. This was in *Churchman* v. *Martin*, 54 Ind. 388. But the court evinced no disposition to construe this statute liberally, for in the same case it decided that a stipulation to pay 5 per cent. expenses of collection *other than attorney fees* was not within the statutory prohibition, and was valid. So, also, a clause in a note, by which the maker *unconditionally* agreed to pay 5 per cent. attorney fees, was held not within the statute, which, it was pointed out, required the agreement to be conditional, and the condition to be inserted in the instrument. The same position was taken in *Brown* v. *Barber*, 59 Ind. 533; *Smock* v. *Ripley*, 62 Ind. 81; *Garven* v. *Pontius*, 66 Ind. 192; *Tuley* v. *McClung*, 67 Ind. 10,—all these cases holding that an unconditional stipulation to pay attorney fees or expenses of collection is valid, and does not destroy the negotiability of the note.

In *Nelson* v. *White*, 61 Ind. 139, a promissory note, secured by mortgage, and containing a conditional stipulation to pay attorney's fees, had been executed before the enactment of the above statute, but was afterwards altered by the consent of all parties by increasing the rate of interest, and then executed by an additional maker as surety for the first maker, whereupon the mortgage was released. On appeal by the principal alone, it was decided that such alteration did not as to him merge the note as originally executed into a new one, and he was held liable for the attorney fees.

The validity of attorney fee or expense clauses in notes and bills was passed upon by the Indiana court before the enactment of the statute, and, of course, without regard to it, in *Stoneman* v. *Pyle*, 35 Ind. 104, wherein are instruments stipulated for the payment of attorney's fees in case suit should be commenced on it. Said the court : "It may be conceded that a note, in order to be placed upon the footing of bills of exchange, must be for a sum certain; for in no other way can the maker know precisely what he is bound to pay, or the holder what he is entitled to demand. But the note in question, if paid at maturity, or after maturity, but before suit brought thereon, is for a sum certain. On the maturity of the note the maker knew precisely what he was bound to pay, and the holder what he was entitled to demand. In the commercial world, commercial paper is expected to be paid promptly at maturity. The stipulation for the payment of attorney's fees could have no force except upon a violation of his contract by the defendant. Had the defendant kept his contract and paid the note at maturity, or afterwards, but before suit, he would have been required to pay no attorney's fees, nor would there have been any difficulty as to the extent of his obligation." The case was said to be analogous to a class of usury cases, wherein it is decided not to be usury which will invalidate the contract to require, as a penalty for failure to pay at maturity, the payment of a sum as extra interest, because the borrower may pay the principal and avoid the penalty. "So here," the court said, "the defendant had the right to pay the face of the note when due and avoid

attorney's fees. As long as the note retained the peculiar characteristics of commercial paper, viz., up to the time of its maturity and dishonor, the amount to be paid on the one hand, and recovered on the other, was fixed and definite."

To the same effect is *Billingsley* v. *Dean*, 11 Ind. 331; *Strough* v. *Gear*, 48 Ind. 100; *Smith* v. *Muncie Nat. Bank*, 29 Ind. 158; *Hubbard* v. *Harrison*, 38 Ind. 323; *Wyant* v. *Pattorf*, 37 Ind. 513; *Walker* v. *Woolen*, (Ind.) 4 Cent. Law J. 248.

The same views were held in Iowa in *Sperry* v. *Horr*, 32 Iowa, 184; the court saying, besides, "that this agreement relates rather to the remedy upon the note, if a legal remedy be presumed, to enforce its collection than to the sum which the maker is bound to pay. It is not different in its character from a *cognovit* which, when attached to promissory notes, does not destroy their negotiability."

To the same effect see, also, *Nelson* v. *Everett*, 29 Iowa, 24; *Weatherby* v. *Smith*, 30 Iowa, 131; *McGill* v. *Griffin*, 32 Iowa, 445; *McIntire* v. *Cagley*, 37 Iowa, 676.

In Illinois, *Nickerson* v. *Sheldon*, 33 Ill. 372, holds that an instrument promising to pay a specific sum, "and $10 in addition * * * for attorney fees," is a valid promissory note.

In Oregon the United States circuit court holds valid such stipulations, and the notes or bonds containing them. *Wilson S. M. Co.* v. *Moreno*, 6 Sawy. 35; *Bank of British N. A.* v. *Ellis*, Id. 96.

So it is also held in Louisiana. *Dietrich* v. *Baylie*, 23 La. Ann. 767.

And in Kansas, *Seaton* v. *Scovill*, 18 Kan. 435; and so in *Howenstein* v. *Barns*, 5 Dill. 484, by the United States circuit court.

In *Morgan* v. *Edwards*, 53 Wis. 599, the instrument sued on was a promise to pay B. or order on a day and at a bank named a specific sum of money; and, further, a promise "to pay all expenses, including attorney's fees incurred in collecting," etc. It was decided that the two promises were inseparable parts of the same instruments; that the second promise bound the promisor to pay, not merely the expenses of enforced collection after maturity, but whatever expense may accrue to the holder in receiving payment at maturity; and that as such expenses were of an uncertain amount, the instrument was not a negotiable note. The court, however, expressly refrained from expressing its opinion whether a promise in an instrument to pay the expense of collecting it after *maturity*, or *by suit*, would destroy its negotiability. But this latter point was decided in *Gaar* v. *Louisville Banking Co.* 11 Bush, (Ky.) 182, wherein a bill of exchange had an indorsement on the back of it, by which the drawer, drawee, payee, and one indorser agreed "to pay a reasonable attorney's fee to any holder thereof, if the same shall hereafter be sued upon." It was decided to be valid and negotiable. "The reason for the rule that the amount to be paid must be fixed and certain," said the court, "is that the paper is to become a substitute for money, and this it cannot be unless it can be ascertained from it exactly how much money it represents. As long, therefore, as it remains a substitute for money, the amount which it entitles the holder to demand must be fixed and certain; but when it is past due, it ceases to have that peculiar quality denominated negotiability, or to perform

the office of money; and hence anything which only renders its amount uncertain after it has ceased to be a substitute for money, but which in nowise affected it until after it had performed its office, cannot prevent its becoming negotiable paper. Until the paper in question matured, the amount due upon it was fixed and certain, and it might, therefore, take the place of money. When it became overdue, that fact put an end to its career, and then for the first time the amount to which the holder was entitled became uncertain, or rather might be made uncertain by bringing an action on the bill against the parties who signed the agreement indorsed thereon."

Here, then, are two conflicting classes of cases, the first composed of cases decided by the supreme courts of Pennsylvania, Minnesota, Wisconsin, and Missouri, holding that a stipulation in an instrument to pay attorney fees or other expenses of collection makes the amount of it uncertain and destroys its negotiability; the second, composed of cases decided by the supreme courts of Indiana, (when not controlled by a statute,) Iowa, Illinois, Louisiana, Kansas, and Kentucky, and the United States courts in Oregon and in Kansas, affirming the contrary doctrine, viz., that such stipulations do not render the amount of the instrument uncertain, and do not destroy its negotiability. Clearly the weight of authority is in favor of the negotiability of instruments containing the stipulations. The true principles applicable to instruments containing these stipulations appear to be these:

The amount payable by a negotiable instrument *at maturity* must be certain.

If this amount is made uncertain by a clause in the instrument requiring the payment *at maturity* of an indefinite sum as attorney fees or collection expenses, besides principal and interest, then the instrument is rendered not negotiable on account of uncertainty in amount. Being not negotiable, indorsees cannot sue upon the instrument, nor are indorsees liable to be sued on their contract of indorsement of it. But the payee may sue the maker upon the instrument.

If the amount payable at maturity is certain, it is not rendered uncertain by a stipulation to pay indefinite attorney fees or expenses to be incurred and paid *after maturity*. Such a stipulation does not destroy the negotiability of the note or bill. This conclusion is contrary to the decision in the principal case of *Hardin* v. *Olson*, but is believed, nevertheless, to be sound law. It is clearly reasonable, and is sustained by the great preponderance of authority.

Interesting questions are whether, supposing the note or bill to be negotiable, indorsers are liable to pay attorney fees and expenses of collection, or whether only the maker incurs this liability. And whether indorsees, as well as the payee, may collect such expenses from the maker, or, if they are liable, from the indorsers. In *Bullock* v. *Taylor*, 39 Mich. 139, the court say that if the agreement is valid, and constitutes a part of the obligation of the makers upon which a recovery may be had in a suit owing on the note, then it will be conceded the notes which contain it are not within the obligation the surety has assumed. The surety undertook for the payment of the price of the goods to be sold, and not for any failure to pay promptly, and his promise cannot be enlarged in any particular without his consent. This is merely *dicta*, however.

In *Ware* v. *City Bank*, 59 Ga. 841, the action was by the holder of a draft embracing within it a factor's lien on the drawer's growing crops and personalty to secure the repayment of the advance, and 10 per cent. counsel fees. This agreement was decided to be altogether between the drawer and the acceptors, and to relate to the enforcement of the lien. The action being by the holder (indorsee) of the draft, the court directed that the attorney's fees be disallowed.

In *Short* v. *Coffeen*, 76 Ill. 245, it is said that when a note requires the maker to pay attorney's fees in case of suit, it *seems* the assignor (indorser) of such note is not liable for the fee in a suit against him.

These cases do not decide the instrument not to be negotiable, but rather imply the contrary, the decisions being confined to the enforcement of the stipulation considered as a separate contract from the note or bill in which it is written.

There does not seem to be any good reason why one who indorses a promissory note should not be held liable to perform all the promises contained in it. This is the view taken in 1 Dan. Neg. Inst. § 62, where it is said that the liability for the attorney fee, "as for every engagement imported by the bill or note, enters into the acceptor's and indorser's contract."

In *Smith* v. *Muncie Nat. Bank*, 29 Ind. 158, an acceptor of a bill of exchange was held liable. In *Hubbard* v. *Harrison*, 38 Ind. 323, the liability was enforced against a payee who was in fact an accommodation indorser. Judge DEADY holds that such a stipulation passes with the instrument to each and every holder thereof; and each subsequent party to such instrument becomes thereby responsible in like manner for such fee to each and every subsequent holder thereof. *British Bank of N. A.* v. *Ellis*, 6 Sawy. 97.

In the principal case of *Hardin* v. *Olson*,* the federal court follows a decision by the supreme court of Minnesota, and in *Howestein* v. *Barnes*, 5 Dill. 484, the federal court followed a decision by the supreme court of Kansas. But the question is one of commercial law, as to which state decisions are not binding upon federal courts.

*Chicago.*                                                    ADELBERT HAMILTON.