DAVIDSON v. VORSE.

1. **Fraudulent Representations**: MADE THROUGH ANOTHER. In an action upon a contract evidence was held admissible to show that one of the parties thereto, previous to its execution, made false representations regarding the subject-matter of the contract to the son of the other party, with the intention that they should be communicated to the latter.

2. **Attorney's Fees**: ACTION: WHAT CONSTITUTES. Where a note provided for the payment of attorney's fees for its collection, if an action should be commenced thereon, it was held that the prosecution of the claim against the estate of the maker, where payment was resisted by the administrator, was such an action as would authorize the allowance of the fee for collection.

*Appeal from Polk Circuit Court.*

WEDNESDAY, DECEMBER 3.

ON the 19th day of March, 1877, N. T. Vorse executed and delivered to the plaintiff his promissory note for the sum of eight hundred and forty-four dollars. Afterwards the said N. T. Vorse died, and C. S. Vorse was duly appointed administrator of his estate. The plaintiff filed the note in the court below as a claim against the estate.

The defendant filed an answer in which he averred that the said note was given in part consideration for ten shares of

stock in the Marseilles Manufacturing Company, a corporation doing business at Marseilles, Illinois, and that for the purpose of effecting a sale thereof to the decedent the plaintiff falsely and fraudulently represented that said company was doing a large and profitable business, that stock therein was at a premium of twenty-five per cent, and could not be purchased for less than that sum; and that he had been offered that amount by certain parties for his stock, but had refused to sell because the parties who proposed to purchase were operating a rival manufactory. And said plaintiff, as an extra inducement to decedent, offered said stock at $575 a share, the said shares being for $500 each. That plaintiff well knew said representations to be false. That said N. T. Vorse was induced by said fraudulent representations to make said purchase, whereby his estate became damaged in the sum of $800.

It is further averred that said N. T. Vorse made said purchase for the benefit of his son, Frank Vorse, and as an advancement for him, and the plaintiff being a director in said company agreed with decedent that if he would purchase said stock the said Frank Vorse should be at once taken into the service of said company at a salary of $800 per annum; that said Frank offered his service to said company, but was refused said sum of $800 per annum, and was only paid $600, and the consideration of said note has, therefore, failed to the extent of two hundred dollars.

There was a trial by jury and a verdict and judgment for the plaintiff. Defendant appeals.

*St. John & Williams*, for appellant.

*Wright, Gatch & Wright*, for appellee.

ROTHROCK, J.—I. It appears from the evidence that N. T. Vorse was in feeble health during the winter and spring of 1877. His home was at Des Moines, and he was absent for medical treatment in Ottumwa, and also in Galesburg, Ill. His son, O. S. Vorse, had charge of his business during his absence. In March, 1877, while at Galesburg, he wrote a letter

to his son, of which the following is a copy, so far as it relates to the purchase of the stock in question:

"Davidson was here to-day, and we traded $5,000 worth of stock with fifteen per cent, $5,700. Frank is to go down Monday night. Leave Des Moines on the C., R. I. at 11 in the evening, and will arrive at Marseilles 11 on Tuesday. He will take Elliott's note, due January next, for $2,700, or thereabouts, and one due a year from January next; same amount. That will leave two or three hundred dollars, for which I told him I would give some good note or my own. I endorse in either case. Have Frank take the notes and make the endorsement, and sign my name. D. says he will give him his furniture, about $50 worth, now, and will want to make him a bridal present of a china tea set, worth $50. You needn't send deed. They will, when F. gets there, make the transfer. Frank will come this way home. 　*　*　*　　　　　N. T. VORSE."

It thus appears that the contract was consummated at Galesburg. The defendant introduced himself as a witness, and sought thereby to prove that the plaintiff made certain representations to him, before the 14th day of March, 1877, in regard to said stock, which he communicated to his father. He also proposed to testify that Davidson made certain representations to him at the time the note was executed. The evidence was objected to and the objection was sustained.

The defendant did not propose to testify that Davidson admitted, at the time the note was executed, that he had in Illinois, when the agreement was entered into, made representations to the decedent as to the value of the stock, etc., but he did propose to detail a conversation which he had with Davidson, as to the value of the stock when Davidson came to him to get the notes. This was clearly incompetent. The agreement was consummated in Illinois; that is, the decedent there agreed to give $5,700 for the ten shares of stock. It is true the balance for which his own note was to be given was greater than he supposed it would be, but this did not alter the contract so that it could be said to be a contract made with Davidson by C. S. Vorse, for his father, N. T. Vorse.

II.   With respect to the representations made by the plaintiff to C. S. Vorse, which the latter communicated to his father, another and more difficult question arises. We think, under all the circumstances, the evidence should not have been excluded.   It cannot be claimed· that false representations must be shown to have been made at the very time the contract in question was consummated. If made during the negotiations they are admissible, and it is for the jury to determine from all the evidence whether, when thus made, they operated upon the mind of the party at the time when the contract was closed, and induced him to enter into it.   If the false representations had been made directly to N. T. Vorse, in the hearing of the witness, it cannot be doubted that the evidence would have been competent.   In such case it would not be proper for the court to determine that they did not induce the decedent to make the contract.   That would have been a question for the jury under all the circumstances of the· case.   We do not understand from the record that the evidence was rejected because the representations were made to a third party, and by him communicated to N. T. Vorse, but upon the ground that they were not proposed to be connected with the final consummation of the contract at Galesburg.   If the representations were·made to C. S. Vorse by the plaintiff with intent that they should be communicated to N. T. Vorse, and thus induced the latter to purchase the stock, the effect was precisely the same as though made directly.   That the representations were made with intent was a question for the jury, taking into the consideration the relations of the parties, the fact that C. S. Vorse had charge and control of his father's business, and the other facts and circumstances disclosed in evidence.

Upon the same ground we think the evidence of Frank Vorse, which was excluded by the court, should have been admitted, it being to the same effect as the evidence of C. S. Vorse.   It may be that other negotiations and representations were made after this, and that the decedent was in no manner influenced by the communications which he received from the

*Marginal note:* 1. FRAUDULENT representations: made through another.

plaintiff through these witnesses, but that was not a question for the court.

III. The note in suit provides for attorney's fees for collection, if an action be commenced thereon. This question as to the allowance of attorney's fees was withdrawn from the jury and submitted to the court. Evidence was introduced as to what was a reasonable allowance, and the court fixed the amount at $150. The defendant insists that no fees should have been allowed because of the filing of a claim against an estate, and proving the same is not an action.

2. ATTORNEY'S fees: action: what constitutes.

It is not at all probable that when the note was executed the parties had in mind any nice technical distinctions as to what is an action. It was intended that if resort be had to legal proceedings for the collection of the note the plaintiff should be at no expense, but that reasonable attorneys' fees should be allowed him, and this, we think, is the proper construction of the note. It may be true that for the mere filing of the note accompanied by an affidavit, where there is no resistance, an attorney's fee should not be allowed, because the services of an attorney are not necessarily required, but where the claim is resisted, and the services of an attorney are requisite to the proper prosecution of the cause, it is an action within the meaning of this note—it is a legal proceeding for the enforcement of a right in a court of justice. Code, section 2505.

IV. It is contended by counsel for appellee that the assignment of errors is not sufficiently specific to entitle appellant to a hearing in this court. The assignment of those above discussed, and which seem to us to be all that are necessary to be determined, as they involve the very merits of the appeal, are as specific as they well could be made. They point out with more than ordinary particularity the errors complained of.

For the errors above pointed out the judgment will be reversed and the cause remanded for a new trial.

REVERSED.