**REDDIN v. WILSON et al.**

**WATERLOO SAV. BANK v. WILSON et al.**

**Nos. 172, 173.**

District Court, N. D. Iowa, Cedar Rapids Division.

July 26, 1935.

C. J. Cash, of Anamosa, Iowa, for Reddin and Wilson.

Pike, Sias, Zimmerman & Butler, of Waterloo, Iowa, for Waterloo Sav. Bank.

SCOTT, District Judge.

On December 14, 1934, C. E. Reddin, as receiver of the Anamosa National Bank, filed his bill in equity in this court against C. T. Wilson and the Waterloo Savings Bank, praying judgment against the defendant C. T. Wilson in the sum of $5,- 933.56 and interest on a promissory note of said Wilson for $5,000, dated June 17, 1931, and praying the establishment of its lien upon fifty-five shares of capital stock of the Waterloo Savings Bank, pledged by Wilson to the Anamosa National Bank as security for the payment of the note. The Waterloo Savings Bank was made party defendant because it is alleged it claims an interest in, and a lien upon, the stock. On the same day, the Waterloo Savings Bank filed its bill in equity in the district court of the state of Iowa, in Black Hawk county, against said Wilson and C. E. Reddin, as receiver of the Anamosa National Bank, praying judgment against said Wilson in the sum of $6,818.45, with interest on a promissory note of said Wilson dated April 17, 1934, for $6,566.36, and praying the establishment of its statutory lien upon the same stock as prior to the lien of said Reddin, receiver, by reason of the provisions of section 15 of chapter 30, Acts of the Forty-Third General Assembly of Iowa, approved April 12, 1929, and effective by publication April 17, 1929. The latter cause was promptly removed from the state court to this court by the receiver of the Anamosa National Bank, and docketed as cause No. 173. The bills in each of the causes were answered; in each case the Waterloo Bank and the receiver of the Anamosa National Bank claiming priority of liens. The cases were submitted together upon a single stipulation of facts and without further evidence, and will be considered and disposed of together.

The act of the Iowa Legislature referred to, after repealing a previous act, provides: "No state bank, savings bank, or trust company shall make any loan or discount on the security of the shares of its own capital stock, or be the purchaser or holder of any shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall be sold at public or private sale, or otherwise disposed of, within one (1) year from the time of its purchase or acquisition unless the time is extended by the superintendent of banking. State banks, savings banks, and trust companies shall have prior lien on their debtors' shares of stock for all obligations to the bank subject, however, to loans against the stock which the bank has acknowledged by written notice."

The stipulation of facts upon which the causes are submitted sets forth, in substance:

That in the year 1927 said Wilson, doing business as Dearborn Construction Company, was indebted to the Waterloo bank in the sum of $30,000, which indebtedness was later reduced from time to time to the amount of $6,566.36, which sum is represented by the note described in the bill in cause No. 173. That there is due on said note, principal and interest, the sum of $7,004.39. That such indebtedness was created in good faith by the money loaned said Wilson by the bank, and that, unless the Waterloo bank can realize money out of said shares of stock, it will sustain a total loss. That said Wilson was the holder of record of said fifty-five shares of stock represented by certificate No. 116, and that said certificate carried the provision, "transferable only on the books of the corporation by the holder hereof in person or by attorney, upon surrender of this certificate properly endorsed." That said certificate is in the hands of said Reddin, receiver, together with the note of the Anamosa bank, and that the certificate is indorsed in blank by C. T. Wilson. That said Reddin as such receiver holds the note of said Wilson for $5,000, payable to the Anamosa National Bank. That no transfer of the stock certificate was ever made on the books of the Waterloo bank and no notation upon the stub of the certificate made. That C. P. Vanzante, cashier of the Anamosa National Bank, would testify without dispute that on July 18, 1929, he deposited in the United States mail, addressed to the Waterloo Savings Bank at Waterloo, Iowa, a letter as follows:

"July 18th 1929.
"Waterloo Savings Bank, Waterloo, Iowa.

"Gentlemen: In conformity to the laws and custom governing the holding of stock as collateral we beg to inform you that we hold as collateral· the following certificate of the capital stock of your institution issued in the name of C. T. Wilson:

| Number | Shares |
| --- | --- |
| 116 | 55 |

"Will you, therefore, kindly accept due notice of same by making the proper notation on your records and by acknowledging receipt of this letter to us, for our files.

"Very truly yours,

"Cashier."

That the·executive officers of the Waterloo Savings Bank were J. J. Miller, cashier, and R. W. Waite, vice president, and that they would testify without contradiction that the mail coming to said bank was handled and distributed by them and that they or neither of them had ever received or had brought to their attention the above letter, and that the letter could not be found in the files of the Waterloo bank. That about May 2, 1932, Reddin wrote the Waterloo bank advising that he held the certificate and asking for an estimate of its present value. That the Waterloo bank replied inclosing a copy of its last financial statement, but declining to place a value thereon. That no application was ever made by the Waterloo Savings Bank under the provisions of section 15, chapter 30, aforesaid, for an extension of time beyond the one year referred to in said statute, and no extension was ever granted. The certificate of stock was apparently delivered to the Anamosa National Bank on or prior to July 18, 1929. The existing note is presumably a renewal of a debt previously existing. The usual blank assignment and power of attorney is printed on the back of the certificate, which was duly signed by C. T. Wilson.

The question involved under the issues in both of these cases is that of priority of Reddin, receiver, under the blank assignment of the certificate of stock, and the Waterloo Savings Bank under the statutory lien created by section 15, chapter 30, Acts of the 43d General Assembly of Iowa.

It is clear that at the time Wilson signed the blank assignment and power of attorney on the back of the certificate of stock and delivered the certificate as security for his debt to the Anamosa bank, that bank was authorized to fill in the blanks of the assignment and either demand a transfer of the stock on the books of the issuing bank or a notation on the books or the stub of the certificate in writing by the issuing bank. Either of these acts would have protected the Anamosa bank in case the issuing bank made the transfer or the notation in writing, but the Anamosa bank did neither of these things. In case the demand for the transfer or notation upon the stub had been made by the Anamosa bank and refused by the Waterloo bank, then a question similar to the one now confronting the court would arise, viz. the extent of the rights of the Waterloo bank under the act of the Forty-third

General Assembly aforesaid. We therefore approach a consideration, analysis, and construction of section 15 of chapter 30, aforesaid. Prior to that enactment, section 9184 of the Code of 1927 merely provided that savings banks "shall not purchase, hold, or make loans upon the shares of its capital stock." The Forty-third General Assembly repealed the quoted language of the Code of 1927 and reconstructed and enacted a complete section on the subject. In doing so we are forced to assume that the Legislature drew some very fine distinctions between different legislative expressions. The new section (15) in the first sentence provides: "No state bank, savings bank, or trust company shall make any loan or discount on the security of the shares of its own capital stock, or be the purchaser or holder of any shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall be sold at public or private sale, or otherwise disposed of, within one (1) year from the time of its purchase or acquisition unless the time is extended by the superintendent of banking." It will be observed here that the prohibition of the previous statute is qualified and apparently does not apply when a condition arises which will result in loss on a debt previously contracted. When such condition arises, the apparent intent of the Legislature was that, while the bank had been prohibited under the first clause from making loans upon the security of its shares originally, it might under the second clause become the purchaser or holder to prevent loss, but with the onus of being required to dispose of the same within one year or such further time as the superintendent of banking might permit. The Legislature at this point of construction seems to have foreseen the probability of contest for priority in the presence of the conditions named. It therefore added the second and last sentence now quoted: "State banks, savings banks, and trust companies shall have prior lien on their debtors' shares of stock for all obligations to the bank subject, however, to loans against the stock which the bank has acknowledged by written notice."

If one is to give all parts of section 15 force and effect and reconcile terms and provisions first apparently conflicting, I think the last sentence providing for priority of lien must be limited to the scope of the second clause of the first sentence and both sentences construed together; that is to say, the priority of lien provided for in the second sentence arises only when the conditions are present which would result in a loss on a debt previously contracted in good faith by the issuing bank. In other words, the conditions contemplated by the second clause of the first sentence and the second sentence in its entirety is a condition of insolvency on the part of the bank's debtor, and all limitations upon the original prohibition merely prescribe a rule which shall govern legal and equitable remedies in case of such insolvency. It may be contended that the construction of the section here suggested would render nugatory the first clause prohibiting the making of loans upon the security of the shares. I think, however, there is a possible and rational distinction. Had the loan originally been made upon the security of the shares and the shares taken in pledge, such pledge would not only stand for the protection of the bank in the face of a loss to itself, but would become incidental to the primary evidence of indebtedness, usually in the form of a promissory note, negotiable or transferable, and upon such negotiation and transfer would follow the original evidence of indebtedness into the hands of other parties, and upon default of payment the holder of the debt and shares securing the same might immediately resort to the shares, regardless of the personal responsibility of the maker. And in the meantime the shares would be inalienable by the stockholder even though apparently solvent, and therefore beyond the reach of application by the bank. This interpretation of course makes the prior lien specified in the second sentence of the section a qualified one, but to interpret otherwise and assume a legislative intent to create a real and absolute lien from the origin of the stockholder's obligation to the bank would, I think, nullify the first clause of the section, for it would be idle to say that the bank did not loan upon the security of its shares when security must automatically arise through the very making of the loan.

Construing section 15 as here indicated, it is, I think, apparent that the Waterloo Savings Bank, in view of the conceded insolvency of Wilson, may enforce its lien as against the claim of Reddin, receiver of the Anamosa bank; the latter bank having neither asked for a transfer

694

nor any notation upon the books of the issuing bank or stub of the certificate, nor insisted upon an answer to their letter of July 18, 1929, acknowledging the status of their security. The court therefore finds the equities of the cases with the Waterloo Savings Bank, plaintiff in cause No. 173 and defendant in cause No. 172. Judgment will be entered in cause No. 172 in favor of Reddin, receiver, and against Wilson, defendant, for the amount due upon said receiver's note, and decree for the application of any residue remaining from the proceeds of the shares of stock after satisfying the claim of the Waterloo Savings Bank and costs. And judgment will be entered in cause No. 173 in favor of the Waterloo Savings Bank and against the defendant C. T. Wilson for the amount due on its note with costs and decree for the subjection and sale of the shares of stock in controversy and application of the proceeds to the satisfaction of said judgment with interest and costs. Counsel for the Waterloo Savings Bank will prepare a decree in conformity with this opinion embodying the stipulated facts as findings which will be applicable to both cases, and the decree will then be entered in each of the two cases submitted, with proper exceptions.