First Bank & Trust Company of Ottumwa (now Fidelity Savings Bank of Ottumwa), Claimant, Appellee, v. Leslie H. Whipp, Executor, Appellant.

No. 45462.

August 4, 1941.

Jones & White, for appellee.

McNett, Kuhns, McNett & Aiken, for appellant.

Stiger, J.—In 1930 Elizabeth Simmons executed a note for $13,000 payable to the First Trust and Savings Bank of Ottumwa. In 1931 she executed two notes to the First National Bank of Ottumwa aggregating $600.

In 1929 W. B. Bonnifield, President of the above-named banks, borrowed $15,000 of Elizabeth Simmons and pledged to her 170 shares of his stock in said banks as security for the loan.

On October 3, 1931, the said banks and two other banks consolidated and merged into the First Bank and Trust Company of Ottumwa, a new corporation, plaintiff herein. In the consolidation agreement plaintiff was called the consolidated bank and the four banks were called contributing banks. At the time of the consolidation, Mr. Bonnifield was indebted to the First National Bank of Ottumwa in the amount of $10,000. At said time the bank owned the note of Will H. Wycoff in the sum of $23,970 and held as collateral security Bonnifield's $25,000 note to Wycoff which was secured by real-estate mortgage.

Under the terms of the consolidation, plaintiff assumed the liabilities of the four banks and was given selected assets of the banks. Each stockholder received from the plaintiff bank under the consolidation one share of stock for each share of. stock owned in the consolidated banks, par value $50.

In setting up the assets of the plaintiff bank, pursuant to the consolidation, the total indebtedness of Bonnifield to the First National Bank in the sum of $33,728.40, which included his note to Wycoff in the sum of $23,970, held by the bank as collateral security was, at the direction of the examiner in charge, evidenced by a note of Henry Hervey, trustee, to plaintiff in said sum which note listed as collateral the three Bonnifield notes formerly held by the First National Bank. The trustee's note bore the notation "with no personal liability" and it is apparent that, regardless of this method of transfer, the two notes given by Bonnifield to the First National Bank and his note to Wycoff became assets of the plaintiff bank.

Bonnifield surrendered his stock in the two banks, part of which had been pledged to Mrs. Simmons, and received in lieu thereof an equal number of shares in plaintiff bank. Mrs. Simmons was a stockholder in the two contributing banks and consented to the consolidation. After the consolidation Bonnifield, on January 2, 1932, executed a new note for $13,000 to Mrs. Simmons, $2,000 having been paid on his $15,000 note to her, and assigned by separate instruments 179 shares of stock in plaintiff bank to her as security which assignment, stock and note were delivered to Mrs. Simmons. No notice of the transfer of this stock or the stock in the consolidated banks

as collateral to Mrs. Simmons was ever given as required under the provisions of section 8387, 1939 Code.

Mrs. Simmons died in March, 1933, and Mr. Bonnifield and defendant, Leslie H. Whipp, were appointed executors. Bonnifield, who was the active executor, obtained possession of the stock in plaintiff bank which he had pledged to Mrs. Simmons and on January 22, 1936, surrendered his 509 shares, par value $25, of stock to the plaintiff in full settlement of his indebtedness in the sum of $33,000.

The stock surrendered to the bank in settlement of the indebtedness included the 179 shares of stock Mr. Bonnifield had pledged to Mrs. Simmons. As shown above, plaintiff and defendant are creditors of Bonnifield.

Plaintiff claims a prior lien on the bank stock pledged by Bonnifield to Mrs. Simmons by virtue of section 9221.2, 1939 Code, for the amount of Bonnifield's indebtedness.

Defendant, executor of the estate of Mrs. Simmons, claims his right to the stock under the pledge is superior to any right that the bank may have therein.

Plaintiff also asserts that it did not have notice of the pledge of the stock required by section 8387 at the time it obtained Bonnifield's stock in full settlement of his indebtedness in 1936, and therefore, acquired the stock free from the pledge lien.

I. We will first consider whether plaintiff had a prior lien for Bonnifield's indebtedness on the bank stock pledged by him to Mrs. Simmons under the provisions of section 9221.2, 1939 Code, which reads:

"9221.2 Owning or loaning on its own stock—prior lien of bank. No state bank, savings bank, or trust company shall make any loan or discount on the security of the shares of its own capital stock, or be the purchaser or holder of any shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall be sold at public or private sale, or otherwise disposed of, within one year from the time of its purchase or acquisition unless the time is extended by the superintendent of banking.

"State banks, savings banks, and trust companies shall have prior lien on their debtors' shares of stock for all obligations to the bank subject, however, to loans against the stock which the bank has acknowledged by written notice."

Appellant's first proposition is that plaintiff did not have a statutory lien on the pledged stock as security for Bonnifield's note to Wycoff in the sum of $23,000 held as collateral security because it was not a direct indebtedness of Bonnifield to plaintiff bank. With this contention we agree.

The second paragraph of the section gives a bank a prior lien on its debtors' shares of stock for all obligations to the bank. This paragraph limits the lien of a bank on its debtors' shares of stock to all *direct* obligations of the debtor shareholder to the bank. An obligation of a shareholder to a third person and subsequently acquired by the bank is not within the scope of the paragraph.

To give the bank a lien on the stock of its stockholder whenever it acquired his debt to third persons, of which acquirement the stockholder might be unaware, would make the status of his stock as to encumbrances uncertain and prejudice him in a manner clearly not contemplated by the legislature. In the case of Boyd v. Redd, 120 N. C. 335, 336, 27 S. E. 35, 36, 58 Am. St. Rep. 792, 793, the bank's charter gave the bank a lien on shares of its stockholders to secure any indebtedness by them to the bank. The opinion, in holding that the statutory lien on the stock was intended to secure only the direct indebtedness of a stockholder to the bank, either as principal or surety, and was not intended to secure an involuntary indebtedness to it caused by the purchase of his liability to a third person, states:

" 'It is clear that at common law a corporation has no lien upon the shares of its stockholders for debts due from them 'to the company. The policy of the common law has always been to discountenance secret liens, inasmuch as they hinder trade and restrict the safe and speedy transfer of property.' Cook, Stock & S. §521 ; 2 Thomp. Corp. §2317 ; 2 Wat. Corp. 227 ; Heart v. Bank, 17 N. C. 111. The statute, in such cases, being in derogation of common right, must be strictly construed to the

purpose of its enactment. That purpose is thus clearly stated in Bank v. Smalley, 2 Cow. 770: 'This clause in bank charters is intended merely for the protection of the bank, i. e. to give them a lien on the stockholder for what he owes the bank.' "

As stated in 7 Am. Jur. 59, section 62, "The lien, however, extends only to transactions between the bank and its stockholder, and does not cover obligations given by him to a third person and assigned to the bank."

It follows that appellant's contention that plaintiff did not have a statutory lien on the stock pledged to Mrs. Simmons as security for Bonnifield's note to Wycoff held as collateral must be sustained.

We cannot agree with appellant's further proposition that plaintiff acquired the two notes given by Bonnifield to the First National Bank in the sum of $10,000 by purchase and therefore did not have a lien for this indebtedness as it was not a direct indebtedness of Bonnifield to plaintiff.

The assets of the old banks were set up as the assets of the new bank by the superintendent of banking and the notes of Bonnifield to the First National Bank in the sum of $10,000 were carried on the setup on the books of plaintiff as direct obligations of Bonnifield to the plaintiff. The effect of the consolidation, as to these notes, was to substitute the plaintiff as direct obligee in the notes in lieu of the First National Bank.

We hold that this indebtedness is a direct obligation to plaintiff which acquired a statutory lien on the stock issued to Bonnifield superior to the lien of Mrs. Simmons under her pledge if the circumstances essential to the lien required by section 9221.2 were present. When Mrs. Simmons accepted from Bonnifield the pledge of his stock in plaintiff bank for his indebtedness to her in lieu of the First National Bank stock, she took it subject to whatever statutory lien plaintiff had under section 9221.2.

The first paragraph of said section provides that a bank shall not loan on the security of its shares or be the purchaser or holder of any such shares "unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith."

This paragraph prohibits the bank from acquiring its stock unless it is necessary to prevent loss upon a debt previously contracted in good faith with the debtor stockholder. Stock acquired by a bank within the terms of the statute permits it to set off its stock liability against the liability of its debtor shareholder. In enacting the second paragraph of the statute it must be presumed the Legislature intended its provisions to be consistent with and not in direct contradiction to the provisions of paragraph one. Paragraph one prohibits a bank from holding its shares as security unless necessary to prevent loss. We hold that under paragraph two the bank has a prior lien on its debtors' shares of stock as security when necessary to prevent loss on the debt.

In the case of Reddin v. Wilson, (Iowa), 11 F. Supp. 691, the contest was, as in the instant case, between a bank claiming a lien under section 9221.2 for a direct obligation of its stockholder and a creditor of the stockholder to whom the stock was pledged as security, each creditor claiming a prior lien on the stock. We agree with the following views of Judge Scott on this section. The opinion, after reviewing the history of this Legislation, states at page 693:

"When such condition arises [necessity of acquiring stock to prevent loss], the apparent intent of the Legislature was that, while the bank had been prohibited under the first clause from making loans upon the security of its shares originally, it might under the second clause become the purchaser or holder to prevent loss, but with the onus of being required to dispose of the same within one year or such further time as the superintendent of banking might permit. The Legislature at this point of construction seems to have foreseen the probability of contest for priority in the presence of the conditions named. It therefore added the second and last sentence now quoted: 'State banks, savings banks, and trust companies shall have prior lien on their debtors' shares of stock for all obligations to the bank subject, however, to loans against the stock which the bank has acknowledged by written notice.'

"If one is to give all parts of section 15 [chapter 30, 43d General Assembly, now section 9221.2] force and effect and reconcile terms and provisions first apparently conflicting, I

think the last sentence providing for priority of lien must be limited to the scope of the second clause of the first sentence and both sentences construed together; that is to say, the priority of lien provided for in the second sentence arises only when the conditions are present. which would result in a loss on a debt. previously contracted in good faith by the issuing bank. * * * This interpretation of course makes the prior lien specified in the second sentence of the section a qualified one, but to interpret otherwise and assume a legislative intent to create a real and absolute lien from the origin of the stockholder's obligation to the bank would, I think, nullify the first clause of the section, for it would be idle to say that the bank did not loan upon the security of its shares when security must automatically arise through the very making of the loan.''

■ The stipulation filed in the instant case stated that the two notes in the sum of $10,000, which represented the direct indebtedness of Bonnifield to plaintiff, and the Wycoff collateral note in the sum of $23,000, could not have been collected by plaintiff without resorting to the stock of Bonnifield. However, the record does not disclose that plaintiff could not have collected the two direct obligations of Bonnifield in the sum of $10,000 during the time Mrs. Simmons or defendant held the pledged stock without resorting to it as security. The prior lien given by the statute attached to the stock only during the time and to the extent it was necessary to prevent loss to the bank. Therefore, plaintiff did not have a statutory lien on the pledged stock for Bonnifield's indebtedness.

■ II. As a national bank does not have a lien on bank stock of its debtor shareholder. and as Bonnifield was not indebted to the Savings Bank, neither of the contributing banks had a statutory lien on the stock pledged to Mrs. Simmons to secure Bonnifield's indebtedness to her prior to the consolidation. Appellant claims that in taking over the assets of said banks, plaintiff did not have ''more security than the First National Bank'', that is, appellant asserts, plaintiff did not have a lien on its stock issued to Bonnifield which was pledged to Mrs. Simmons after the consolidation. We do not agree with this contention. Under the consolidation, Bonnifield's indebtedness to the First National Bank and Savings Bank became direct

obligations to plaintiff bank for which plaintiff had a statutory lien and Mrs. Simmons accepted the pledge of Bonnifield's stock in plaintiff bank charged with knowledge of the provisions of section 9221.2.

III. Plaintiff contends that, aside from the question of whether it had a statutory lien under section 9221.2 superior to the lien of Mrs. Simmons under her pledge, it obtained from Bonnifield all of his stock in the bank, including Mrs. Simmons' pledged stock, in satisfaction of Bonnifield's indebtedness with-out receiving the statutory notice of the transfer of the shares as collateral to her as required by section 8387, and therefore, owns the stock free of the lien of the pledge. It is conceded that neither Mrs. Simmons nor the executors of her estate gave statutory notice of the pledge.

Sections 8386 and 8387, 1939 Code, were originally one section. See section 1626, Code of 1897. Section 8386 provides that the transfer of shares is not valid, except as between the parties thereto until regularly entered upon the books of the company, etc.

Section 8387 reads:

"8387 Transfer of shares as collateral. When any shares of stock shall be transferred to any person, firm, or corporation as collateral security, such person, firm, or corporation may notify in writing the secretary of the corporation whose stock is transferred as aforesaid, and from the time of such notice, and until written notice that said stock shall have ceased to be held as collateral security, said stock so transferred and noticed as aforesaid shall be considered in law as transferred on the books of the corporation which issued said stock, without any actual transfer on the books of such corporation of such stock."

Plaintiff relies on the following pronouncement in Maloney v. Storjohann, 206 Iowa 721, 723, 221 N. W. 208, 210:

"Section 1626 [8387], * * * which requires a transfer of the stock of a corporation to be entered on the books of the company, or that notice thereof be given when pledged as collateral security, is imperative, and no transfer is valid unless one of these provisions is complied with. Fort Madison Lbr. Co. v. Batavian Bank, 71 Iowa 270; Ottumwa Screen Co. v. Stodghill,

103 Iowa 437; Perkins v. Lyons, 111 Iowa 192; First Nat. Bank v. Way, 167 Iowa 426; National City Bank v. Fairbank State Bank, 173 Iowa 489. * * * This statute has always been strictly construed. * * * Actual knowledge, however, of the secretary does not supersede the necessity of notice, nor is actual notice of the secretary sufficient to protect the lien of one holding it as collateral security against the claims of creditors who have levied thereon.''

The Maloney case correctly states the rule applicable to a contest between creditors of the stockholder other than the bank but does not control the decision of the question before us. The transfer by Bonnifield of the stock of Mrs. Simmons as collateral was valid between the parties under sections 8386 and 8387, which sections must be construed together, and this transfer must be sustained unless the plaintiff bank has established a superior interest in the stock. Section 9221.2 prohibits a bank from' dealing in its own stock unless necessary to prevent loss upon a debt previously contracted with the stockholder in good faith.

■ Plaintiff relies on the statement in the stipulation that from the time of the consolidation in 1931 to the time of the settlement of the Bonnifield indebtedness by his conveyance to plaintiff of his stock in 1936, the total indebtedness of Bonnifield of $33,000, which included his note to Wycoff, in the sum of $23,000, could not have been collected by the bank without resorting to the bank stock.

But the indebtedness of Bonnifield to Wycoff was not a debt previously contracted by Bonnifield to the bank and was not a debt for which the statute permitted plaintiff to acquire Bonnifield's stock.

As heretofore stated the record does not show that the acquisition of Bonnifield's stock in 1936 pledged to Mrs. Simmons was necessary to prevent loss upon the direct debt of Bonnifield to the bank previously contracted in the sum of $10,000. It appears that at the time of the settlement Bonnifield owned 80 acres of unencumbered land worth $8,000 and the bank held certain stock as collateral security for his indebtedness which was worth over $1,300. After deducting the 170 shares pledged to Mrs. Simmons from the 509 shares

conveyed to the bank by Bonnifield it had 339 shares of its stock worth over $8,000. As plaintiff has not established the holding of the 170 shares which had been pledged to Mrs. Simmons was necessary to prevent loss upon the direct indebtedness of Bonnifield, the conveyance of these shares to the bank was ultra vires and did not affect the pledgee's rights therein. We hold defendant executor's right to the 170 shares of stock of plaintiff bank pledged by Bonnifield to Mrs. Simmons superior to the claim of the bank and appellant's contention that plaintiff converted said shares must be sustained. Defendant was entitled to judgment on the counterclaim.

IV. Appellant executor pleaded the statute of limitations as a defense to the promissory notes executed by Mrs. Simmons to plaintiff alleging that plaintiff did not file its claim within one year from the date of the first publication of notice of the appointment of the executor as provided by section 11972 which reads:

"11972 When claims of fourth class barred. All claims of the fourth of the above classes, not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or supreme court at the time of his death, or unless peculiar circumstances entitle the claimant to equitable relief."

The notice was given in August, 1933, and plaintiff filed its claim in August, 1936. However, we agree with plaintiff's proposition that peculiar circumstances entitle it to equitable relief. Within 6 months after notice of the appointment of the executor was given, Mr. Bonnifield, executor, filed an application in the estate describing plaintiff's notes, stating they were past due; that the estate was justly indebted to plaintiff on the notes; that the banking department was insisting that plaintiff collect the notes; that it would be disadvantageous to the estate to sell its real estate, stocks and bonds to pay said notes; that the estate desired to let the indebtedness stand and asked authority that he be authorized and directed to execute as executor of the estate a collateral note or notes for the notes executed by Mrs. Simmons to the bank that were past due and let said indebted-

ness stand subject to further orders of the court. On November 6, 1933, an order was made by the court in the Simmons' estate granting the application of the executor and authorizing him to execute his notes as executor as prayed. Thereupon Bonnifield, executor of the Simmons' estate, executed and delivered to the plaintiff three notes in the same amounts as the notes that had been executed by Mrs. Simmons to plaintiff and also delivered to it a copy of the order of the court.

The new notes given by the executor and the notes given by Mrs. Simmons to the bank formed the basis of the claim filed by the bank in 1936.

In July, 1936, and before plaintiff filed its claim, Bonnifield and Whipp, executors, asked authority of the court to sell 375 shares of preferred stock of Deere & Company and apply the proceeds upon the Simmons' notes and the executors' notes representing the Simmons' indebtedness to plaintiff. The application was allowed and plaintiff, having possession of the stock, sold it and applied the proceeds on the indebtedness. The Vice President of plaintiff bank testified that shortly after Mrs. Simmons' death he discussed with Bonnifield, executor, the question of filing a claim against the estate. Bonnifield was also an officer of the bank. The witness testified that Bonnifield told him that it was unnecessary to file the claim; that it was a just claim against the estate. The witness further stated:

"In refraining from filing the claim, I relied upon the fact that the application was made, that an order was signed, and that the notes with copies of the application and order were furnished to me."

The estate was open and solvent when the claim was filed and there were sufficient assets on hand to pay the claim. The probate court found the notes were valid claims against the estate and to avoid loss to the estate authorized the executor to execute new notes to the bank and execute renewals thereof from time to time and let said indebtedness stand unless otherwise ordered by the court. The claim of the bank is based not only on the notes executed by the decedent, but also on the new notes executed by executor pursuant to the direction of the court. The order was made for the benefit of the estate. The notes were

delivered to the bank with copy of the order of the probate court. The circumstances relied upon by plaintiff as a basis for equitable relief all occurred within the year allowed for filing claims and it is too clear to require discussion that they are sufficient to entitle it to equitable relief from the bar of the statute.

For a recent case thoroughly considering this question, and reviewing the authorities, see Federal Land Bank v. Bonnett, 226 Iowa 112, 284 N. W. 97.

V. There is no merit to appellant's assignment that the court erred in taxing attorney fees on each of the notes because the claim arose out of one transaction. The claim of the bank arose out of separate transactions with Mrs. Simmons and plaintiff was entitled to attorney fees on each note. Bankers' Iowa St. Bk. v. Jordan, 111 Iowa 324, 82 N. W. 779; Wenstrand v. Kiddoo, 222 Iowa 284, 268 N. W. 574. However, we are of the opinion that appellant is right in his contention that attorney, fees should not be computed on the amount realized by the bank on the sale of collateral held by it as security for the note. Section 11644 provides for attorney fees upon written contracts after an action has been commenced. We held in Davidson v. Vorse, 52 Iowa 384, 3 N. W. 477, if a claim on a note is filed against an estate and the claim is resisted claimant has commenced an action within the meaning of the statute.

On July 9, 1936, Bonnifield and defendant, as co-executors, following the suggestion of the Vice President of the bank to sell the collateral because it then had a high market value procured an order from the probate court authorizing them to sell the stock and apply the same on the notes. Plaintiff who had possession of these stocks sold them at market value on July 9th, but did not apply the proceeds on the notes until after the claim was filed in August, 1936. The stock was sold with the consent of the beneficiaries of the estate. As the amount realized from the sale of the collateral was not obtained through the action on the claim, attorney fees should not have been allowed thereon. —Affirmed in part; and reversed in part.

MILLER, C. J., and SAGER, BLISS, OLIVER, HALE, and GARFIELD, JJ., concur.

WENNERSTRUM, J., takes no part.